**Raymond McNAIRY, III, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1407–89.**

Court of Criminal Appeals of Texas, En Banc.

June 19, 1991.

Rehearing Denied Aug. 26, 1991.

---

**102**

Charles O. Grigson (court appointed), Austin, for appellant.

Ronald Earle, Dist. Atty., and Robert Smith and Dayna Blazey Baird, Asst. Dist. Attys., Robert Huttash, State's Atty., Austin, for the State.

Before the court en banc.

OPINION ON APPELLANT'S PETITION
FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted of aggravated possession of more than 28 grams but less than 400 grams of a controlled substance, namely methamphetamine. Tex.Rev.Civ. Stat. art. 4476–15 § 4.03 (repealed and re-enacted as Tex.Health & Safety Code § 481.112). After a pretrial hearing on his motion to suppress evidence, in which the

trial court denied appellant's motion, appellant entered a plea of guilty and was sentenced to six years imprisonment. Appellant's plea of guilty did not waive his right to later complain of error in the trial court's ruling at the pretrial hearing. Tex. R.App.P. 41(b).

The Third Court of Appeals affirmed appellant's conviction, finding that the search of appellant's trailer home was justified because the police could reasonably believe that appellant's landlord had the apparent authority to grant access to the mobile home. *McNairy v. State*, 777 S.W.2d 570, 574 (Tex.App.—Austin 1989). Appellant filed a petition for discretionary review in this Court raising four grounds for review. We granted appellant's petition for discretionary review, pursuant to TEX.R.APP.P. 200(c)(2), in order to determine (1) whether the court of appeals erred in holding that a landlord can give consent to search a tenant's premises; (2) whether the court of appeals erred in holding that appellant did not properly preserve error; (3) whether there was no probable cause for the warrantless search and seizure of appellant's home; and (4) whether the affidavit in support of the search warrant was facially invalid and whether the search pursuant to the warrant amounted to a continuation of a prior invalid search. We will affirm the judgment of the court of appeals.

In his motion to suppress evidence, appellant claimed that the search of his residence and seizure of evidence was made without probable cause, and in violation of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, art. 1 §§ 9 and 10 of the Texas Constitution, and Tex.Crim.Proc. Code arts. 1.05, 38.22, [sic] and 38.23. At the pretrial hearing on the motion to suppress, the State called two witnesses. Appellant did not call any witnesses. We will rely on the court of appeals' statement of the facts as established at the pretrial hearing.

On February 2, 1988, Dan Hinkle, Travis County Deputy Sheriff, assigned to the Organized Crime Unit, responded to a call from fellow officers that they had been called to a disturbance involving burning vehicles at a residence at 8104 Linden, Del Valle, and had found a quantity of drugs and paraphernalia. Upon arriving, Hinkle acquired the written voluntary consent of Rhonda Reynolds, an owner, to search the house at 8104 Linden and all outbuildings upon the 10–acre tract involved. The search at 8104 Linden uncovered a methamphetamine lab and other drug-related items.

The officers then began to search the land in back of 8104 Linden. As Deputy Hinkle and Sgt. Gideon [Austin Police Department] walked down a well-defined path through tall weeds they came within 50 feet of one of the outbuildings, a mobile trailer house, when they both smelled the strong odor of methamphetamine emanating from the trailer. As they proceeded, Hinkle heard the back door of the trailer "thrown open" and heard people running into the nearby brush, but he could not see the individuals because of the tall weeds. Gideon went to the front of the trailer and Hinkle went to the rear where he opened the back door to see if anyone else was present. At this point he observed chemicals associated with the manufacture of methamphetamine stacked just inside the doorway. He secured the trailer and began to ask questions of Rhonda Reynolds, who was present, and learned for the first time that the trailer had been rented to appellant McNairy and an Edward Fancher and learned the address was 16202 Fagerquist. Hinkle decided at this point to secure a search warrant before proceeding further. Hinkle acquired a search warrant from a magistrate and returned to the scene. During his testimony, the written consent to search executed by Rhonda Reynolds and the search warrant and the affidavit upon which it was based were admitted into evidence without objection.

Sgt. Ruben Fuentes, Austin Police Department, was called to the scene, and waited there with Sgt. Gideon for Hinkle to obtain the search warrant, and when Hinkle arrived with the warrant he participated in the search as the "seizing

officer." He listed the numerous items of methamphetamine, chemicals and equipment found in the trailer during the search pursuant to the warrant. It was this methamphetamine that was the basis of appellant's conviction. (footnote omitted)

*McNairy v. State,* 777 S.W.2d at 571–72.[1]

■ The court of appeals applied the so-called apparent authority doctrine to uphold the initial search of appellant's home and thus, affirm his conviction. The court of appeals explained that the apparent authority doctrine originated in *People v. Gorg,* 45 Cal.2d 776, 291 P.2d 469 (1955), and, simply put, states that when officers have acted in good faith upon the consent given by an owner in conducting a search, the evidence seized cannot be excluded merely because the officers made a reasonable mistake as to the extent of the owner's authority. *See also Nix v. State,* 621 P.2d 1347, 1349–50 (Alaska 1981).[2] The court of appeals then concluded that in the instant case, the police officers could have reasonably believed that appellant's landlord had authority to consent to search all of the outbuildings on the ten acre tract. The court noted that when ambiguous circumstances arose, the officers immediately stopped, made necessary inquiries, and obtained a search warrant. Furthermore, the court concluded that opening the door of appellant's trailer home after smelling the chemicals and hearing people running away did not constitute an "invalid warrantless search or taint the subsequent search." *McNairy,* 777 S.W.2d at 574.

1. Appellant raised only one point of error in the court of appeals. The point was divided into three parts; (1) no probable cause existed for the initial warrantless search and seizure of appellant's trailer home; (2) the consent obtained from appellant's landlord did not authorize the search of appellant's home; and (3) the affidavit in support of the search warrant for appellant's home was invalid on its face, and the search warrant itself was invalid because it was a continuation of a prior illegal search. The court of appeals found that the points of error raised did not comport with the suppression motion, the objections, and arguments presented at the pre-trial hearing. *McNairy,* 777 S.W.2d at 571. *see* TEX.R.APP.P. 52(a). Nevertheless, the court found that the contentions raised on appeal that the consent given by landlord did not authorize the initial search, and that there was a lack of probable cause for the initial warrantless search, "should have been apparent to the trial court from the context presented." Thus, the court of appeals considered these two points. *Id.* at 572.

With respect to appellant's claims concerning the search warrant and probable cause affidavit, the court of appeals first noted that the argument made to the court at the pretrial hearing concerned primarily the extent and validity of the consent given by appellant's landlord, and whether Hinkle and the other officers had sufficient justification for entering the trailer to "secure" the premises. The court of appeals found that since the state had produced the search warrant and affidavit, the burden shifted to appellant to demonstrate the warrant's invalidity. *Id.* at 572 (citing *Russell v. State,* 717 S.W.2d 7 (Tex.Cr.App.1986); *Miller v. State,* 736 S.W.2d 643 (Tex.Cr.App.1987); *Rumsey v. State,* 675 S.W.2d 517 (Tex.Cr.App.1984)). Appellant failed to produce any evidence demonstrating the invalidity of the warrant or the affidavit.

Since appellant failed in meeting his burden at pretrial, and since the claims advanced on appeal did not comport with the argument made at pretrial, the court of appeals found that nothing was presented for review regarding appellant's claims concerning the affidavit and search warrant. *Id.*

2. The United States Supreme Court has since adopted the apparent authority doctrine in *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). Rodriguez was arrested in his apartment and charged with possession of illegal drugs which were seized in plain view. The arresting officers did not have an arrest or search warrant, but had gained access to the apartment through Rodriguez's former girlfriend. The girlfriend referred to the apartment as "ours," told officers that she had clothes and other possessions inside, opened the door with a key, and gave consent to search. In actuality, she no longer lived there, did not pay rent, did not enter the apartment unless Rodriguez was present, and was not authorized to have a key. The Supreme Court concluded that "[w]hether the basis for such [apparent] authority exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably." *Id.* 110 S.Ct. at 2800. Thus, a warrantless search pursuant to a third party consent is valid if "... the facts available to the officer at the moment ... [would] 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises." *Id.* at 2801 (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The case was remanded for a determination of whether the officers reasonably believed that the girlfriend had authority to consent to the search.

In his first ground for review, appellant asserts that the court of appeals erred in holding that appellant's landlord could give consent to search his premises. Although we agree with the ultimate result reached by the court of appeals, we find their wholesale application of the apparent authority doctrine is unnecessary to resolve the instant case.

We first note that this Court has never adopted the apparent authority doctrine. In the instant case, the apparent authority doctrine is of some value, in that we can use the doctrine to determine if Hinkle and the other officers were justified in being where they were, when they smelled the odor of the methamphetamine laboratory emanating from appellant's trailer home and heard people running away (i.e., when probable cause and exigent circumstances to conduct the initial warrantless search of the trailer might have arisen). The testimony from the pretrial hearing indicates that Hinkle, accompanied by other officers and appellant's landlord, was approximately fifty feet away from appellant's trailer home when he first smelled the suspicious odors, and only a few steps closer when he heard people exiting the trailer. Nothing in the record indicates that, at this point, Hinkle had any reason to believe that the landlord's consent to search the premises did not extend to his present location on the ground.

 Under the apparent authority doctrine, an officer conducting a consent search must make reasonable inquiries when "ambiguous circumstances" arise. *See United States v. Heisman,* 503 F.2d 1284 (8th Cir.1974). Thus, when confronted with a situation that does not reasonably appear to be included within the consent obtained, the searching officer must stop and make inquiries as to the continued effectiveness of the consent. *See Nix v.*

*State,* 621 P.2d at 1349 (The apparent authority doctrine "does not mean that the police may proceed without inquiry in ambiguous circumstances or that they may reasonably proceed based on the consenting party's assertions of authority if those assertions appear unreasonable"); *see and compare Illinois v. Rodriguez, supra* note 2 (where neither the circumstances or the assertions of the consenting party were ambiguous).

 In the instant case, Hinkle's testimony indicates he was not aware that appellant's trailer home had a separate address and was occupied as a rental unit, until after the initial warrantless search. Furthermore, nothing in the record indicates that appellant's rental arrangement covered anything more than the trailer home and its immediate environs. Thus, it appears that Hinkle and the other officers were reasonably justified in believing that the consent given by appellant's landlord was effective, at least to the point where they first smelled the odor from the laboratory and heard people running away.[3] We further conclude, however, that the court of appeals erred in holding that the officers were reasonably justified in searching appellant's residence based on the apparent authority of appellant's landlord. We adhere to the general rule that a landlord cannot normally give effective consent to allow a search of a tenant's premises. *See Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961).

In his third ground for review, appellant asserts that there was no probable cause and no exigent circumstances to justify the initial warrantless search and seizure of his home. Appellant argues that the mere odor of an illegal substance does not justify a warrantless search. *See Taylor v. Unit-*

---

**3.** Hinkle's testimony further indicated that ambiguous circumstances arguably arose prior to his entry into appellant's trailer. At the time of entry Hinkle should have been aware of the possibility that the trailer might be a separate residence occupied by someone other than appellant's landlord. The trailer was approximately 75 yards from the landlord's residence, fronted a different street, and was obviously occupied by other persons immediately prior to Hinkle's entry. *See e.g. United States v. Poole,* 307 F.Supp. 1185 (E.D.La.1969) (Police should have made inquiries before searching overnight bag found in closet. The presence of a guest in the apartment combined with the presence of the overnight bag "should have suggested to a reasonable mind the possibility that the bag might belong to the guest.")

*ed States,* 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932); *Stewart v. State,* 681 S.W.2d 774 (Tex.App.—Houston [14th] 1984, pet. ref'd). Appellant asserts that the officers could have secured the trailer home by other means and that their entry was unwarranted under the circumstances.

The State counters that the officers' initial entry into appellant's home was a "cursory inspection and not a full blown search of the premises." State's Brief at 15. The State argues that the initial entry was justified because the officers had a reasonable belief, based on specific and articulable facts, that appellant's home harbored persons who posed a danger to the officers or could destroy evidence.

■ The threshold question presented is whether the initial entry into appellant's home constituted a search. Although Hinkle's testimony indicates that the initial entry into the trailer was very limited, it was nevertheless an entry into appellant's residence. An unconsented police entry into a residential unit constitutes a search under *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A person normally exhibits an actual, subjective expectation of privacy in their residence, and society is prepared to recognize this expectation as objectively reasonable. *Id.* Nothing in the record shows that appellant did not exhibit an actual expectation of privacy in the trailer home. Thus, we find that the initial entry into appellant's home was a search.

■ In order for a warrantless search to be justified, the State must show the existence of probable cause at the time the search was made, and the existence of exigent circumstances which made the procuring of a warrant impracticable. *Hooper v. State,* 516 S.W.2d 941 (Tex.Cr.App.1974); *Reed v. State,* 522 S.W.2d 916 (Tex.Cr.App. 1975); *Washington v. State,* 660 S.W.2d 533 (Tex.Cr.App.1983); *Delgado v. State,* 718 S.W.2d 718 (Tex.Cr.App.1986). Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a

crime or evidence of a crime will be found. *Washington v. State,* 660 S.W.2d 533, 535 (Tex.Cr.App.1983).

The Supreme Court has expressed the probable cause standard as follows:

[P]robable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observe as trained officers. We weigh not individual layers but the "laminated total ..." In dealing with probable cause, ... as the very name implies, we are dealing with *probabilities.* These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

*Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1948); *Woodward v. State,* 668 S.W.2d 337 (Tex.Cr.App.1982) (opinion on rehearing).

■ In the instant case, the facts and circumstances available to the officers prior to the initial entry included: (1) the "unmistakable" odor of a methamphetamine laboratory emanating from appellant's trailer home; (2) the sound of the back door of the trailer flying open and persons running through the brush into a nearby wooded area; and (3) the presence of another methamphetamine laboratory on the same ten acre tract. In addition, Hinkle testified that he had personally "taken down" twenty-five methamphetamine laboratories in the last two years, and participated in seizing several other manufacturing operations. Hinkle testified that the odor associated with the chemicals and processing involved in the manufacture of methamphetamine was unmistakable, and that he had received specific police training on the process used to make methamphetamine including actually making the substance himself.

Given the sum total of the information available to Hinkle, the reasonable inferences that could be drawn from that information, and his experience in seizing similar operations, we conclude that probable cause did exist at the time of the initial entry into appellant's trailer home.

If probable cause is present, the inquiry becomes whether exigent circumstances existed to obviate the need for a search warrant and justify the initial warrantless entry into appellant's trailer home. *Hooper, supra; Delgado, supra.*

A variety of such circumstances may place a police officer in situations in which a warrantless entry is viewed as a reasonable reaction by the officer. Situations creating exigent circumstances usually include factors pointing to some danger to the officer or victims, an increased likelihood of apprehending a suspect, or the possible destruction of evidence. *See e.g. Stewart v. State,* 681 S.W.2d 774 (Tex.App.—Houston [14th] 1984, pet. ref'd) (exigent circumstances justifying a warrantless entry include (1) rendering aid or assistance to persons whom the officers reasonably believe are in need of assistance; (2) preventing the destruction of evidence or contraband; and (3) protecting the officers from persons whom they reasonably believe to be present and armed and dangerous).

█ In the instant case Hinkle testified that he entered appellant's trailer home to see if anybody was still in the trailer. In summation, the State argued that exigent circumstances in this situation included: (1) destruction of the evidence by a person remaining in the trailer home; and (2) immediate danger to the officers from anyone still in the trailer home.

With regard to the possible destruction of evidence as an exigent circumstance, the State must show that the police could have reasonably concluded that evidence would be destroyed or removed before they could obtain a search warrant. *See United States v. Rubin,* 474 F.2d 262 (3d Cir.1973).

In *Rubin,* the Third Circuit identified five circumstances relevant to a reasonable determination by the searching officers that evidence might be destroyed or removed before they could obtain a search warrant.

Circumstances which have seemed relevant to courts include (1) the degree of urgency involved and the amount of time necessary to obtain a warrant ...; (2) reasonable belief that the contraband is about to be removed ...; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought ...; (4) information indicating the possessors of the contraband are aware that the police are on their trail ...; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.

*Rubin,* 474 F.2d at 268; *see* LaFave, Search and Seizure § 6.5(b).

In the instant case, officers on the scene could have reasonably believed that one or more suspects remained in the trailer, in spite of evidence that several persons had already fled the scene. Anyone remaining in the trailer might have posed a threat to the officers or been able to destroy evidence. The evidence at pretrial showed that anyone remaining in the trailer would have likely known that the police were on the scene. Furthermore, the record reflects that the evidence seized at the trailer apparently could have been destroyed or removed in a matter of minutes.

Based on these factors, we conclude that the officers faced a real possibility that evidence would be destroyed and thus, they were justified in entering appellant's trailer to check for suspects who might have so destroyed evidence. Since we find that the possible destruction of the evidence provided an adequate exigent circumstance, we need not address the other possible exigent circumstances that might have justified the officers' actions. Appellant's third ground for review is overruled.

In his second and fourth grounds for review, appellant argues that the court of appeals erred in finding that his claims on appeal concerning (1) the facial invalidity of the affidavit in support of the search warrant, and (2) the search of the trailer home pursuant to the search warrant being invalid as a continuation of a prior illegal search, were procedurally defaulted. We agree with the court of appeals' disposal of these claims. The record from the pretrial hearing reveals that the State introduced

the affidavit and search warrant, and that appellant did not object. The record further reveals that appellant made no attempt to demonstrate the facial invalidity of the affidavit and search warrant, or to argue that the later search of appellant's trailer home was invalidated by the prior "illegal" search. Thus, we agree with the court of appeals holding, and find that the claims presented to this Court do not comport with the arguments and objections made at pretrial. *See* note 1, *supra.* Appellant's second and fourth grounds for review are overruled.

The judgment of the court of appeals is affirmed.

CLINTON and MILLER, JJ., dissent.

BAIRD, J., not participating.