# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-04-00807-CV

**In the Matter of L. J.**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. J-24, 875, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

L.J., a juvenile, was adjudicated delinquent following her plea of true to possession of cocaine in an amount greater than one gram but less than four grams. *See* Tex. Health & Safety Code Ann. § 481.115(c) (West 2003). She appeals from the juvenile court's[1] denial of her motion to suppress. *See* Tex. Fam. Code Ann. § 56.01(n)(2) (West 2002). In her sole issue, L.J. argues that the physical evidence of cocaine possession should not have been admitted because it was obtained by a police officer's unconstitutional search of the home. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9. We hold that the juvenile court could reasonably have found that the State established the existence of probable cause and exigent circumstances justifying a warrantless search of the home. We affirm.

---

[1] The district court was sitting as a juvenile court.

## BACKGROUND

The juvenile court held a suppression hearing to consider whether the physical evidence of cocaine possession was lawfully obtained and could be admitted in L.J.'s adjudication. The following account of the facts is based on the testimony of Austin police officer Robert Paranich, who was the sole witness at the suppression hearing.

Officer Paranich received a report from the landlord, who was trying to evict his residents, that crack cocaine was being sold from his house. A few days later Officer Paranich received a similar report from an individual who had provided drug-related information in the past. That afternoon Officer Paranich decided to visit the house for an investigative "knock and talk" with the residents.

Officer Paranich arrived at the house in a marked police car and in full uniform. He approached the front door and knocked but did not announce that he was a police officer. When L.J. opened the door, Officer Paranich saw a string of clear plastic wrap hanging from the top of her strapless blouse. The plastic wrap string was finely twisted, measured approximately six to seven inches, and hung down halfway to L.J.'s midsection. Officer Paranich asked L.J. what was sticking out of her blouse. When she looked down and saw the plastic wrap her eyes widened with surprise. She then reached for the string but he seized it first.

L.J. had remained just inside the doorway during the encounter so that Officer Paranich's hand crossed the threshold of the house when he grabbed the plastic wrap. He was afraid L.J. would try to discard or destroy the item if he did not seize it immediately. After recovering all

of the plastic wrap, Officer Paranich found a few small rocks of crack cocaine and residue inside a pouch at the end of the twisted string. He then arrested L.J.

When he saw the string hanging from L.J.'s blouse, Officer Paranich recognized the string as part of a plastic wrap pouch commonly used to carry drugs. He knew that a typical pouch is made by placing drugs on clear plastic wrap and then twisting the wrap into a fine string. The material is twirled between the fingers to close the wrap, giving the string its distinctive twisted appearance. Officer Paranich had learned about methods of carrying drugs in police training and had encountered plastic wrap pouches throughout his eight-year career as a patrol officer. His job had kept him in frequent contact with drug activity in the area. Officer Paranich had never found these plastic wrap pouches to contain food or anything other than drugs.

The juvenile court denied L.J.'s motion to suppress. L.J. entered a plea of true to the cocaine possession charge and was placed on probation for one year. On appeal, she seeks to have the order reversed and her adjudication and disposition vacated.

## STANDARD OF REVIEW

A juvenile delinquency proceeding is considered a civil proceeding but is quasi-criminal in nature. *See In re J.R.*, 907 S.W.2d 107, 109 (Tex. App.—Austin 1997, no writ). The juvenile is entitled to the same constitutional rights as an adult because the delinquency proceeding seeks to deprive the juvenile of his liberty. *See id*. Evidence illegally seized or obtained is inadmissible in an adjudication hearing. *See* Tex. Fam. Code Ann. § 54.03(e) (West Supp. 2005).

A ruling on a motion to suppress in a juvenile case is reviewed using the same bifurcated standard that applies to such motions in adult criminal cases. *See In re R.J.H.*, 79 S.W.3d

3

1, 6 (Tex. 2002).  We review de novo the juvenile court's application of the law of search and seizure and probable cause.  *See Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997).  However, we must give almost total deference to the juvenile court's findings of historical fact, especially where the court's findings are based on an evaluation of witness credibility and demeanor.  *See Guzman*, 955 S.W.2d at 89.  At a suppression hearing, the juvenile court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  *See State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

In this case, because there are no findings of fact,[2] the evidence must be viewed in the light most favorable to the ruling.  *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).  We will assume that the juvenile court made implicit findings of fact to support its ruling as long as those facts are supported by the record, and will sustain the juvenile court's ruling if it is correct on any theory of law applicable to the case.  *See id*. at 855-56; *see also Romero v. State*, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990).

The Fourth Amendment prohibits unreasonable searches and seizures.  U.S. Const. Amend. IV. The chief evil it guards against is unwarranted physical entry of the home.  *United States v. United States Dist. Court*, 407 U.S. 297, 313 (1972).  "[T]he Fourth Amendment draws a firm line at the entrance to the house" with respect to seizures of property or persons.  *Payton v. New York*, 445 U.S. 573, 590 (1980).  Without consent, entry by a police officer into one's home constitutes

---

[2] Juvenile courts are not required to make findings of fact in connection with rulings on a motion to suppress.  *See In re R.J.H.*, 79 S.W.3d 1, 7 (Tex. 2002) (citing Tex. Fam. Code Ann. § 51.17 (West 2002)).

a search, even if the entry is for a limited purpose. *See McNairy v. State*, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991) (citing *Katz v. United States*, 389 U.S. 347 (1967)). The warrant procedure guards against needless home intrusions. *Payton*, 445 U.S. at 587.

Searches or seizures inside a home without a warrant are presumptively unreasonable. *Id*. However, a police officer, like any common citizen, has the right to approach the front door of a residence and knock, as long as there are no express orders forbidding trespass. *See Cornealius v. State*, 900 S.W.2d 731, 734 (Tex. Crim. App. 1995). Moreover, what a person knowingly exposes to the public, even in his own home, is not a subject of Fourth Amendment protection.[3] *Katz*, 389 U.S. at 351; *Bower v. State*, 769 S.W.2d 887, 897 (Tex. Crim. App. 1989), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681, 685 (Tex. Crim. App. 1991). The observation of property in plain view involves no invasion of privacy and therefore does not implicate the Fourth Amendment. *See Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000). To justify a warrantless search of the home, the State must show there was probable cause at the time of the search and that exigent circumstances made the procuring of a warrant impracticable. *McNairy*, 835 S.W.2d at 106.

---

[3] Some courts, including the Fifth Circuit, have held that when a felony suspect stands at the open door of his residence, or is otherwise accessible to the public, the expectation of privacy recognized in *Payton* does not exist. *See Fontenot v. Cormier*, 55 F.3d 669, 674 (5th Cir. 1995) (collecting cases). These decisions often cite to *United States v. Santana*, 427 U.S. 38 (1976). The Texas Court of Criminal Appeals has shown limited approval of this approach in *Cornealius v. State*, 900 S.W.2d 731, 734 (Tex. Crim. App. 1995) (holding no Fourth Amendment violation in warrantless arrest of defendant on his grandmother's front porch) (citing *United States v. Vaneaton*, 49 F.3d 1423 (9th Cir. 1995) ( holding no Fourth Amendment violation where defendant voluntarily exposed himself to warrantless arrest by opening door of his hotel room)).

**DISCUSSION**

L.J. contends that the juvenile court erred in admitting the State's physical evidence establishing cocaine possession. She claims that when Officer Paranich's hand crossed the threshold to seize the plastic wrap, his unconsented entry constituted a warrantless search of the home not justified by probable cause and exigent circumstances. Alternatively, L.J. argues that even if there was probable cause, Officer Paranich created the exigent circumstances to justify the warrantless search. At the suppression hearing, the State argued both that this was a plain view seizure and that probable cause and exigent circumstances justified the warrantless search.[4]

**Probable Cause**

Probable cause for a search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a person of reasonable prudence to believe that the instrumentality or evidence of a crime will be found. *Estrada*, 154 S.W.3d at 609; *McNairy*, 835 S.W.2d at 106. Probable cause has been defined as the sum total of layers of information that a reasonable and prudent person acts upon, and not merely individual layers and considerations. *Estrada*, 154 S.W.3d at 609 (citing *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). Probable cause deals with probabilities; the standard requires more than mere suspicion but far less evidence than that needed to support a conviction or even a finding by preponderance of the evidence. *Guzman*, 955 S.W.2d at 87. The determination of probable cause

---

[4] On appeal, the State responds to L.J.'s claims by characterizing the incident as a plain view seizure that occurred in a public place. Because we hold that probable cause and exigent circumstances justified a warrantless search of the home, we need not address the plain view seizure doctrine. *See State v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000).

6

for a warrantless search or seizure is based on the "totality of the circumstances." *Amores v. State*, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991). The State carries the burden of proving the existence of probable cause for a warrantless search. *Id*.

In this case, the reasonably trustworthy facts and circumstances within Officer Paranich's knowledge included the reports of drug activity at the house from two individuals, one of whom claimed to be the owner of the property; the appearance of L.J. at the door with a finely twisted string of plastic wrap hanging out of her blouse; and the surprised look on L.J.'s face and her hurried attempt to grab the string after Officer Paranich's inquiry.

Officer Paranich also testified about his extensive training and experience with methods of carrying drugs, especially the use of pouches made out of twisted plastic wrap. Officer Paranich knew important details about how the pouches were carried, how they were made, and how the process produced a fine string with a distinctive twisted appearance. He had encountered these singular pouches throughout his eight years on patrol for drug activity in the area. Moreover, there was an added certainty in Officer Paranich's experience that these pouches never contained anything other than drugs.

Thus, when Officer Paranich observed a finely twisted, six to seven inch long string made of plastic wrap hanging from L.J.'s blouse, his knowledge and experience prompted him to recognize it as part of a pouch used to carry drugs. To the trained eye of Officer Paranich, the string was not a curiosity but rather evidence that L.J. was carrying drugs. The juvenile court could reasonably have found that there was probable cause for Officer Paranich to believe that searching

7

L.J. would produce evidence of a crime. Accordingly, we next consider whether exigent circumstances were also present.

**Exigent Circumstances**

In addition to establishing probable cause, the State must show exigent circumstances that made the procuring of a warrant impracticable. *McNairy*, 835 S.W.2d at 107. A warrantless search is often considered reasonable in circumstances that indicate danger to the officer or victims, an increased likelihood of apprehending the suspect, or the possible destruction of evidence. *Id*. (citing *Stewart v. State*, 681 S.W.2d 774 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd)). If the exigent circumstances are based on the possible destruction of evidence, the State must show that the officer could reasonably have concluded that the evidence would be destroyed or removed before he could obtain a search warrant. *Id*. (citing *United States v. Rubin*, 474 F.2d 262 (3d Cir. 1973)).[5]

The government's own action or inaction cannot be the likely cause of an exigent circumstance. *See United States v. Vega*, 221 F.3d 789, 798 (5th Cir. 2000); *United States v. Munoz-Guerra*, 788 F.2d 295 (5th Cir. 1986). In *Munoz-Guerra*, the government agents had observed illegal drugs in the defendant's condominium shortly before they approached his patio door. 788 F.2d at 297. When the defendant answered the door it was basically a "foregone

---

[5] Circumstances relevant to the officer's reasonable determination that evidence might be destroyed or removed before a search warrant is obtained include (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband for which a search warrant is sought; (4) information indicating the possessors of the contraband are aware the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in narcotics traffic. *McNairy v. State*, 835 S.W.2d 101, 107 (Tex. Crim. App. 1991) (citing *United States v. Rubin*, 474 F.2d 262, 268 (3d Cir. 1973)).

conclusion" that the agents would make a warrantless entry based on the fear that the defendant might try to destroy the evidence or retrieve a gun. *See id.* at 298. The Fifth Circuit held that where the defendant was not aware of the police surveillance, the mere presence of firearms or destructible contraband did not justify the police in dispensing with the warrant requirement and conducting a warrantless search of defendant's home. *Id.* In essence, the government agents created the exigency by approaching the defendant's residence "under circumstances that were likely to necessitate a protective search of the home." *Vega*, 221 F.3d at 799 (analyzing facts in *Munoz-Guerra*).

Distinguishing *Munoz-Guerra*, the Fifth Circuit upheld the showing of exigent circumstances where the police officers had not observed any criminal activity before approaching the defendant's apartment, but saw a handgun inside when the defendant answered the door. *See United States v. Jones*, 239 F.3d 716, 721 (5th Cir. 2001). In *Jones*, the police officers approached the defendant's residence for a "knock and talk" about complaints of drug activity. *Id.* at 720. In contrast to *Munoz-Guerra*, where the agents' approach served no investigative purpose, the "knock and talk" in *Jones* was a reasonable investigative tactic under the circumstances. *Id.* at 721. The Fifth Circuit held that the warrantless search of the home was justified because the resident of the apartment, not the officers, caused the exigent circumstances by leaving the handgun in plain view. *See id.* at 721-22.

In this case, Officer Paranich was well within his rights in approaching the door of the house to "knock and talk" with any resident he might find there. *See Cornealius*, 900 S.W.2d at 731. It is also clear that Officer Paranich violated no Fourth Amendment right by observing the

9

item hanging out of L.J.'s blouse after she opened the door, exposing her appearance to the public. *See Bower*, 769 S.W.2d at 897.

Officer Paranich testified that when L.J. reached for the plastic wrap string he was afraid that she would discard or destroy it. Considering the degree of urgency, the ready destructibility of the drugs, and L.J.'s awareness that the police were on her trail, Officer Paranich could reasonably have determined that the evidence would be destroyed long before he could obtain a warrant. *See McNairy*, 835 S.W.2d at 107 (citing *Rubin* factors). Accordingly, we hold that the procuring of a warrant was impracticable.

As in *Jones*, L.J. caused the exigent circumstances by opening the door with the plastic wrap string in plain view. *See* 239 F.3d at 721-22. Officer Paranich did not approach the house to make an inevitable warrantless entry, which was the predominant concern of the Fifth Circuit in *Munoz-Guerra*. *See* 788 F.2d 295. Because he had not personally confirmed any drug activity, the "knock and talk" was a reasonable investigative tactic. *See Jones*, 239 F.3d at 721. Under these circumstances, merely asking L.J. about the plastic wrap string did not make Officer Paranich the cause of the exigent circumstances. We hold that L.J. created the exigent circumstances.

We conclude that the juvenile court could reasonably have found that the State established probable cause and exigent circumstances justifying Officer Paranich's warrantless search of the home. This record supports the juvenile court's denial of L.J.'s motion to suppress. *See Ross*, 32 S.W.3d at 855-56.

**CONCLUSION**

The physical evidence of cocaine possession admitted against L.J. was not obtained in violation of either the federal or Texas constitution because the evidence was obtained by a justified warrantless search of the home.  We affirm the judgment of the juvenile court.

_____

Bea Ann Smith

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   December 9, 2005

11