NUMBER 13-05-674-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG






DREW WAYNE ODOM, Appellant,


v.



THE STATE OF TEXAS, Appellee.





On appeal from the 9th District Court 


of Montgomery County, Texas.






O P I N I O N


 

Before Justices Hinojosa, Rodriguez, and Garza


Opinion by Justice Rodriguez 


 This is an appeal from a conviction for the offense of possession of a controlled
substance and possession of a chemical with the intent to manufacture. See Tex.
Health & Safety Code Ann. § 481.115(a), (b) (Vernon 2003), § 481.124 (Vernon
Supp. 2005). By four issues, appellant, Drew Wayne Odom, contends, among other
things, that his Fourth Amendment rights were violated when law enforcement officers
searched his residence without a warrant. Appellant asserts that his refusal of consent
at the time of the search was dispositive as to him, regardless of the consent of a third
party who was not present at the time of the search. The State concedes error in light
of the United States Supreme Court decision in Georgia v. Randolph, 126 S. Ct. 1515,
1520 (2006), an opinion issued after the trial of this case. We reverse and remand.

I. Background

 Pursuant to a report of suspicious activity, a warrantless search was conducted 
of a building where appellant had been living for approximately three months. M.O.
Sims, appellant's brother-in-law, claimed that he was the property owner and gave
"permission to search the whole entire property for anything illegal going on." When
the officers arrived at the property, appellant, who was living there with Sims's
permission, expressly objected to a search without a warrant.

 After the officers informed appellant that Sims had given them permission to
search the property and over appellant's objection and request for a warrant, the
officers secured the building, detained appellant and others who were in the building,
and conducted a search of the property. During the search, the officers gathered
evidence, including an assortment of chemical substances and paraphernalia used in
manufacturing methamphetamine. Sims was not at the property at the time of the
search. 

 At trial, appellant moved to suppress the evidence obtained during the search
on grounds that it was the fruit of an illegal search. The trial court denied his motion. 
After pleading not guilty, a jury found appellant guilty and assessed punishment at
thirty years' imprisonment for the possession of a controlled substance and five years'
imprisonment for possession of a chemical with the intent to manufacture. This
appeal ensued.

II. Standard of Review

 The appropriate standard for reviewing most trial court's rulings on a motion to
suppress is a bifurcated standard of review, giving almost total deference to the trial
court's determination of historical facts and reviewing de novo the court's application
of the law. Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002);
Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2002); State v. Ross,
32 S.W.2d 853, 856 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997).

III. Analysis

 By his first point of error, appellant complains that his Fourth Amendment rights
were violated when police searched the building over his objection, irrespective of
Sims's consent. We agree.

 "[S]earches conducted outside the judicial process, without prior approval by
judge or magistrate, are per se unreasonable under the Fourth Amendment-subject
only to a few specifically established and well-delineated exceptions." Katz v. United
States, 389 U.S. 347, 356 (1967). The three exceptions under which a warrantless
search can be justified are (1) the plain view doctrine, (2) consent, and (3) exigent
circumstances. Stewart v. State, 681 S.W.2d 774, 777 (Tex. App.-Houston [14th
Dist.] 1984, pet. ref'd); see Tex. Code Crim. Proc. Ann. art. 14.05 (Vernon 2005)
(providing that an officer may not enter a residence to make an arrest without a
warrant unless a person who resides there consents or exigent circumstances exist). 
In this case, we review only the consent and exigent circumstance exceptions as the
officers had no other basis for being in the building that could serve to support a "plain
view" contention. See Stewart, 681 S.W.2d at 777.

A. Valid Consent

 "To the Fourth Amendment rule ordinarily prohibiting the warrantless entry of
a person's house as unreasonable per se, one 'jealously and carefully drawn' exception
recognizes the validity of searches with the voluntary consent of an individual
possessing authority." See Randolph, 126 S. Ct. at 1520. The exception for consent
extends even to entries made with the permission of one whom the police reasonably,
but mistakenly, believe to possess such authority. Illinois v. Rodriguez, 497 U.S. 17,
186, 188-89 (1990).

 Based on the testimony elicited at trial, the trial court concluded that Sims had
authority to consent to the search. However, after the trial in this case, the United
States Supreme Court held, in Randolph, that while the consent of one with authority
can support a warrantless entry, "a physically present inhabitant's express refusal of
consent to a police search is dispositive as to him," even in the face of another with
equal authority. Randolph, 126 S. Ct. at 1518, 1520, 1522-24, 1528.

 Since the decision in Katz v. United States, 389 U.S. 347 (1967), it has
been the law that "capacity to claim the protection of the Fourth
Amendment depends . . . upon whether the person who claims the
protection of the Amendment has a legitimate expectation of privacy in
the invaded place." Rakas v. Illinois, 439 U.S. 128, 143 (1978). A
subjective expectation of privacy is legitimate if it is "'one that society
is prepared to recognize as 'reasonable,'" id. at 143-44, n.12, quoting
Katz, supra, at 361 (Harlan, J., concurring).


Minnesota v. Olson, 495 U.S. 91, 95-96 (1990) (omission in original). In Randolph,
the Supreme Court noted the following:

 A tenant in the ordinary course does not take rented premises subject to
any formal or informal agreement that the landlord may let visitors into
the dwelling, and a hotel guest customarily has no reason to expect the
manager to allow anyone but his own employees into his room.


Randolph, 126 S. Ct. at 1522 (citations omitted). In Olson, the Supreme Court
similarly observed the following concerning overnight guests:

 That the guest has a host who has ultimate control of the house is not
inconsistent with the guest having a legitimate expectation of privacy. 
The houseguest is there with the permission of his host, who is willing
to share his house and his privacy with his guest. It is unlikely that the
guest will be confined to a restricted area of the house; and when the
host is away or asleep, the guest will have a measure of control over the
premises. The host may admit or exclude from the house as he prefers,
but it is unlikely that he will admit someone who wants to see or meet
with the guest over the objection of the guest. . . . The point is that
hosts will more likely than not respect the privacy interests of their
guests, who are entitled to a legitimate expectation of privacy despite the
fact that they have no legal interest in the premises and do not have the
legal authority to determine who may or may not enter the household. .
. .


Olson, 495 U.S. at 99 (cited with approval in Randolph, 126 S. Ct. at 1522).

 The evidence at trial showed that the officers knew appellant was at least a
guest with permission to inhabit the building on an ongoing basis. Sims testified that
he respected appellant's privacy and treated the living quarters as though it were
appellant's apartment. Appellant almost always kept the doors locked, and Sims
would infrequently enter or spend time in the living quarters in appellant's absence. 
When appellant was present, Sims would not enter without knocking on the door. 
Additionally, while the trial court found that appellant was a guest, not a tenant, the
court also concluded that appellant and Sims had "equal access" and shared a degree
of "mutual control" over the premises. Based on the above, appellant, even as an
extended overnight guest, had an expectation of privacy. See id. at 94-100.

 Pursuant to Randolph, we conclude that the consent exception to the Fourth
amendment's warrant requirement is inapplicable to the evidence seized and
introduced against him at trial. After securing the residence and detaining appellant,
the officers should have abided by appellant's request that they obtain a search
warrant because Sims's third-party consent was invalid in light of appellant's
objection. See Randolph, 126 S. Ct. at 1522. Appellant's Fourth Amendment rights
were, thus, violated when appellant unequivocally objected to the search of his
property even though a third party, who was not present at the time, may have
consented. See id.

B. Exigent Circumstances

 We look next to the exigent circumstances exception under which a warrantless
search can be justified. See Stewart, 681 S.W.2d at 777. "Situations creating
exigent circumstances usually include factors pointing to some danger to the officer
or victims, an increased likelihood of apprehending a suspect, or the possible
destruction of evidence." McNairy v. State, 835 S.W.2d 101, 107 (Tex. Crim. App.
1991) (en banc). The burden is on the State to prove exigency. McGee v. State, 105
S.W.3d 609, 615 (Tex. Crim. App. 2003).

 Lieutenant Phillip Cash with the Montgomery County Sheriff's Department
testified that when he arrived he was concerned about the threat that the volatile
substances posed to the safety of the community and to the safety of the officers on
the scene. He was also concerned with the prospect that someone may have been
inside destroying evidence. These concerns served as the basis for the initial
protective sweep. See Reasor v. State, 12 S.W.3d 813, 815 (Tex. Crim. App. 2000)
(citing Maryland v. Buie, 494 U.S. 325, 328 (1990) (explaining that protective sweeps
may be conducted to protect the safety of officers and justify a warrantless entry).

 As for the second entry into the building, during which the search was
conducted and evidence seized, the record does not contain evidence of exigent
circumstances. Following the protective sweep, Lieutenant Cash called Sims to
confirm his consent before re-entering the building. Lieutenant Cash testified that had
he not received Sims's consent to the search, he would have withdrawn following the
initial sweep to obtain a warrant. Nothing hazardous was observed during the
protective sweep. The officers had secured the premises and the three individuals
who were present in the building, including appellant, were waiting outside. The
record does not reflect that any contraband was observed during that sweep. We
conclude that no exigent circumstances existed in this instance.

 Accordingly, reviewing de novo the trial court's application of the law, we
conclude that the warrantless entry was unreasonable under the Fourth Amendment,
and the trial court erred when it denied appellant's motion to suppress.

IV. Harm Analysis

 Having concluded error, we must conduct a harm analysis. See Tex. R. App. P.
44.2(a); Hernandez v. State, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001). The harm
analysis for erroneous admission of evidence obtained in violation of the Fourth
Amendment is the constitutional standard set forth in rule 44.2(a) which mandates
that the judgment be reversed unless this Court determines "beyond a reasonable
doubt that the error did not contribute to the conviction or punishment." Tex. R. App.
P. 44.2(a); Hernandez, 60 S.W.3d at 108. In this case, because all of the
incriminating evidence was obtained during the warrantless search, its erroneous
admission formed the basis of appellant's conviction. We cannot conclude that the
error did not contribute to the conviction or punishment; thus, appellant was harmed
by its admission, and the judgment of the trial court should be reversed. See Tex. R.
App. P. 44.2(a). We sustain appellant's first point of error.

 Because this point of error is dispositive of the appeal, we need not address
appellant's remaining points. See id. at rule 47.1.


V. Conclusion

 Accordingly, we reverse the trial court's judgment and remand for further
proceedings consistent with this opinion.


 NELDA V. RODRIGUEZ

 Justice


Publish.

Tex. R. App. P. 47.2(b).


Opinion delivered and filed this

24th day of August, 2006.