NO. 07-07-0353-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 23, 2009
_____

KENDRICK L. FAULK, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-413,797; HON. CECIL G. PURYEAR, PRESIDING
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION

A jury found appellant Kendrick L. Faulk guilty of possession of cocaine (more than four grams but less than two hundred grams) with intent to deliver. Appellant plead true to one enhancement paragraph and the jury sentenced him to 75 years in prison. On appeal, appellant presents four issues: (1) the trial court erred by not suppressing contraband seized by a warrantless search of his apartment; (2) the trial court erred by admitting an oral statement allegedly made by appellant before receiving the statutory warnings; (3) in the sentencing phase, the trial court erred by failing to suppress evidence

seized in a warrantless search of appellant's residence in a prior unadjudicated offense; and (4) in the sentencing phase, the trial court erred by allowing a police officer investigating a prior unadjudicated offense to opine that a field test yielded a positive reading for cocaine. We affirm.

## Background

The State's evidence showed that Lubbock police went to appellant's apartment to investigate after receiving an anonymous 9-1-1 call that someone was "cooking" narcotics there. Eventually, four officers were present. Three stationed themselves near the front while the fourth covered the rear of the dwelling. The three officers watching the front observed five to ten people come and go from the apartment. The officers looked through portions of windows not covered by blinds and saw five males in the apartment living area and one in the bedroom. Two occupants of the living room counted money at a table. The officers' position made them visible to those approaching the apartment. The lead officer decided to knock on the apartment door. The three officers approached the door, arranging themselves in single file.[1] Appellant opened the door and the officer smelled a "strong odor of marijuana." Through the open doorway he saw one occupant near the kitchen toss a baggy containing a white substance. Another occupant, seated on a couch, ran from sight down a hallway. The officer drew his gun and demanded all occupants show their hands. The person who disappeared from view was slow to return and reveal his hands. Once six people exited the apartment officers entered the apartment to

---

[1] One officer referred to their arrangement as a "stack formation."

determine if anyone was hiding and if so to prevent destruction of evidence. In the kitchen, the lead officer found a bag which he testified contained "cocaine" as well as a scale and razorblade each bearing white powder residue. Another reported he saw cocaine in the bathroom toilet. The lead officer then exited the apartment to assist identification of the occupants. Appellant asked him if officers located an unnamed Hispanic male in the apartment. Having found no such person, officers reentered the apartment and searched for another occupant. They found no one but discovered marijuana under a bed.

Appellant was charged with possession of a controlled substance and possession of marijuana and transported to jail. During the booking process he made an oral inculpatory statement to the lead officer. At the time, appellant had not received the constitutional and statutory warnings.[2]

Appellant plead not guilty to the indicted offense of possession of cocaine, with intent to deliver, in an amount more than four grams but less than two hundred grams. The case was tried by jury which found appellant guilty of the indicted offense and under an enhancement paragraph, concerning a prior conviction of possession with intent to deliver cocaine, assessed punishment at 75 years in prison.

Discussion

---

[2] *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon 2005).

In his first issue appellant contends the trial court erred by denying his motion to suppress evidence seized during the warrantless search of his apartment.

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). We give almost total deference to the trial court's determination of historical facts and then review *de novo* the trial court's application of the law to those facts. *Wyatt v. State,* 23 S.W.3d 18, 23 (Tex.Crim.App. 2000); *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App. 2000). If, as here, the trial court did not make explicit findings of fact, we review the evidence in a light most favorable to the trial court's ruling and assume it made implicit findings of fact supporting its ruling. *Carmouche,* 10 S.W.3d at 327-28.[3]

A warrantless search is justified when the State shows that (1) probable cause existed at the time the search was made and (2) exigent circumstances existed which made obtaining a warrant impracticable. *Estrada v. State,* 154 S.W.3d 604, 610 (Tex.Crim.App. 2005); *McNairy v. State,* 835 S.W.2d 101, 106 (Tex.Crim.App. 1991). Probable cause to search a residence exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a person of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found. *Parker v. State,* 206 S.W.3d 593, 597 (Tex.Crim.App. 2006); *McNairy,* 835 S.W.2d at 106. Exigent circumstances allowing a warrantless entry into a house include (1) rendering aid or assistance to persons whom the officers reasonably believe are in

---

[3] Our review of appellant's remaining three issues is likewise governed by the abuse of discretion standard. We will not reiterate the standard in our discussion of those issues.

4

need of assistance; (2) preventing the destruction of evidence or contraband; and (3) protecting the officers from persons whom they reasonably believe to be present and armed and dangerous. *McNairy,* 835 S.W.2d at 107. Several factors are used in analyzing whether officers could reasonably conclude that evidence would be destroyed or removed before they could obtain a search warrant: (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) a reasonable belief that the contraband is about to be removed; (3) the possibility of danger to the officers guarding the site of the contraband while a search warrant is sought; (4) information indicating that the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and knowledge that efforts to dispose of narcotics and to escape are characteristic behaviors of persons engaged in the narcotics traffic. *Id.*

Appellant contends the officers manufactured exigent circumstances to justify their warrantless admission to his apartment. Exigent circumstances do not meet Fourth Amendment standards "if the government deliberately creates them." *United States v. Coles*, 437 F.3d 361, 366 (3rd Cir. 2006); *see United States v. Vega,* 221 F.3d 789, 800 (5th Cir. 2000) (finding asserted exigent circumstances were of the government's "own making"); *see Parker*, 206 S.W.3d at 598 n.21 (citing and discussing *Coles*). Determining whether officers impermissibly manufactured exigencies depends on "'the reasonableness and propriety of the investigative tactics that generated the exigency.'" *United States v. Rico,* 51 F.3d 495, 502 (5th Cir. 1995) (*quoting United States v. Duchi,* 906 F.2d 1278, 1284 (8th Cir. 1990)).

Here, appellant's argument in effect challenges the legitimacy of the officers' "knock and talk" intention. He relies primarily on the Fifth Circuit's opinion in *United States v. Munoz-Guerra*, 788 F.2d 295 (5th Cir. 1986). There, during a drug investigation DEA agents saw a marijuana cigarette and a bag of white powder through the windows of a condominium. They also had other information corroborating an anonymous tip that the condominium contained drugs. When they climbed over a patio fence and knocked on the glass panes of a door, the defendant answered. The door was locked and the defendant indicated he would go into another room to get a key. The agents did not wait for his return but kicked the door in. *Id*. at 297. As the circuit court analyzed the issue whether exigent circumstances justified their doing so, it found the agents' warrantless entry was a "foregone conclusion" once they approached the patio door and made their presence known. *Id*. at 298. The court went on to conclude the record provided no justification for the agents' decision to approach the door rather than await a warrant.

Appellant relies also on two other federal cases[4] in which government exigent circumstances arguments were rejected. In *United States v. Richard*, 994 F.2d 244 (5th Cir. 1993), agents kicked in a motel room door. *Id*. at 247. A supervisor stated the agents "intended to enter the room one way or another to further [their] investigation." *Id*. at 248. Similarly, in *United States v. Berry*, 468 F.Supp.2d 870, 880 (N.D. Tex. 2006), the district

---

[4] Appellant also cites *Vega*, 221 F.3d at 800, which follows and applies *Munoz-Guerra*. In *Vega*, an officer entered a residence through the back door after other officers conducting surveillance knocked on the front door and announced their presence. 221 S.W.3d at 794. The Fifth Circuit found the officers' decision to abandon their secure surveillance positions and approach the door was not justified by any "reasonable predicate." *Id*. at 800.

court found officers' testimony that their entry onto the defendant's property was merely for the purpose of a "knock and talk" not to be credible. *Id*. at 880. The trial court was not required to view the officers' testimony here in the same light. We defer to its implicit acceptance of the officers' explanation that the decision to knock on appellant's door was a reasonable law enforcement tactic[5], and that the exigent circumstance arose from the conduct of the apartment occupants.[6] We overrule appellant's first issue.

In his second issue, appellant argues the trial court erred by admitting an inculpatory oral statement made by him at booking because he did not first receive the warnings of section 38.22 of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.22 § 3(a) (Vernon 2005).

Article 38.22 codifies the *Miranda* warnings. *Lemmons v. State,* 75 S.W.3d 513, 519 (Tex.App.–San Antonio 2002, pet. refused). The *Miranda* protections against self-incrimination come into issue only when the defendant is subjected to custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). During the booking process, or at any other time while a person is in custody, words, actions or questioning by police that the police should know are reasonably likely

---

[5] The "knock and talk" strategy has been recognized by federal courts as a reasonable investigative tool when officers seek an occupant's consent to search or when they reasonably suspect criminal activity. *United States v. Jones,* 239 F.3d 716, 720 (5th Cir. 2001).

[6] Appellant also argues the officers had probable cause before undertaking their "knock and talk" for a reasonable belief the instrumentality or evidence of a crime would be found in the apartment, and so could have obtained a search warrant. The State argues the trial court could have found the officers lacked probable cause at that point. We need not address the question.

to elicit an incriminating response from the accused constitute custodial interrogation. *See Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980); *Roquemore v. State,* 60 S.W.3d 862, 868 (Tex.Crim.App. 2001). Courts have recognized, however, that questions normally attendant to administrative booking procedure do not constitute interrogation for purposes of *Miranda* because such questions normally do not elicit incriminating responses. *See Pennsylvania v. Muniz,* 496 U.S. 582, 601, 110 L.Ed.2d 528, 110 S.Ct. 2638 (1990) (plurality op.); *Cross v. State*, 144 S.W.3d 521, 525 n.5 (Tex.Crim.App. 2004). In deciding whether words or actions constitute interrogation the relevant inquiry "focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *Innis,* 446 U.S. at 301, 100 S.Ct. at 1690.

After finding suspected contraband police arrested appellant and the other occupants of his apartment and transported them to jail. No one in the group admitted ownership of the contraband. It is undisputed that at the time of booking appellant was under arrest and had not received the constitutional and statutory warnings. According to the lead officer, during the booking process arrestees are asked background questions concerning identification, contact information, and medical needs. As appellant was booked he asked the officer to release another arrestee, supposedly a relative of appellant, because, according to appellant, "It's mine." The officer could not remember which background question preceded this statement but he could recall it was a booking question that did not concern the offense or evidence. Based on this testimony, the trial court could have concluded the questions appellant was being asked would not have been perceived by appellant as seeking an incriminating response and so were not interrogation for

8

*Miranda* purposes. The trial court did not abuse its discretion by admitting evidence of appellant's oral statement. We overrule his second issue.

In his third issue, appellant argues the trial court erred by failing to suppress evidence seized in a warrantless search of his residence in a prior unadjudicated offense.

The State began its presentation at the sentencing phase of trial by playing a recorded 9-1-1 call from Tanisha Shivers, a former girlfriend of appellant. According to the call, appellant took Shivers from a residence, pushed her into a pickup, and drove from the scene. An officer responded to a report of Shivers' kidnapping and received additional information directing him to appellant's apartment. Two other officers were also present. At the location, the officers found a pickup fitting the description from the 9-1-1 call. An officer noticed what appeared to be blood on the passenger side of the vehicle's interior. Repeated knocks and announcements at the door of the residence produced no response but through a window an officer saw a male fitting the description of Shivers' abductor walking down a hallway toward a bedroom. An officer then reached through an opening in the window and opened the door. The officers entered the apartment and encountered Shivers clad only in a towel. They observed dried blood on her face and swelling around her nose. She appeared upset at the presence of police and told them she was alone in the apartment. Officers then searched for the male they observed through the window. In the kitchen, they noticed a scale with white residue which an officer agreed in testimony was consistent with narcotics activity. In the bedroom, officers located appellant. When told of the discovery in the kitchen and the intention of the officers to seek a search warrant

9

appellant responded, "'Anything in the house is mine and I will give you consent.'" The resulting search produced items of drug paraphernalia that were admitted into evidence.

Appellant argues that when officers discovered Shivers, the reasonable basis of the search ended. Accordingly, contends appellant, the trial court abused its discretion by not suppressing evidence the officers observed in plain view after locating Shivers, as well as evidence obtained by warrantless search on the consent of appellant.

Under the "emergency doctrine," a warrantless search that would otherwise be illegal may be authorized if a police officer has reasonable cause to believe that, absent an immediate search, serious bodily injury or death may result. *Brimage v. State,* 918 S.W.2d 466, 500-01 (Tex.Crim.App. 1994) (opinion on reh'g). The theory's objective standard of reasonableness requires the court examine the officer's conduct while "tak[ing] into account the facts and circumstances known to the police at the time of the search." *Colburn v. State,* 966 S.W.2d 511, 519 (Tex.Crim.App. 1998) (*citing Brimage,* 918 S.W.2d at 501). Officers operating legitimately under the emergency doctrine may seize any evidence in plain view. *Mincey v. Arizona,* 437 U.S. 385, 393, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). The lawfulness of a search under the emergency doctrine terminates once the emergency ends. *Bray v. State,* 597 S.W.2d 763, 764 (Tex.Crim.App. 1980).

A search conducted after receiving voluntary consent is not constitutionally unreasonable. *Reasor v. State,* 12 S.W.3d 813, 818 (Tex.Crim.App. 2000). Voluntary consent to search must be positive, unequivocal, and not the result of express or implied coercion or duress. *Carmouche v. State,* 10 S.W.3d at 331. When challenged, the State

10

must prove voluntary consent by clear and convincing evidence. *State v. Ibarra,* 953 S.W.2d 242, 245 (Tex.Crim.App. 1997). The trial court "must look at the totality of the circumstances surrounding the statement of consent in order to determine whether that consent was given voluntarily." *Reasor,* 12 S.W.3d at 818. Appellant's contention that the emergency ended when officers located Shivers is untenable. The person fitting the description of the suspected perpetrator of assault and kidnapping, whom officers saw in the apartment, remained at large but Shivers represented she was alone. Under the facts at bar, we find the officers' continued search of the apartment until appellant was located, reasonable. *Cf. Mincey,* 437 U.S. 385 at 392, 98 S.Ct. 2408 at 2413 (on discovery of a potential homicide scene officers may conduct a prompt warrantless search of the premises for the killer or other victims). We find the trial court did not err in admitting the scales and residue observed by officers in plain view as they searched for appellant.

As one of the investigating officers left to obtain a search warrant appellant verbally authorized a warrantless search of the apartment. The record contains no evidence of appellant's reluctance or qualification of consent. Nor does it reveal duress or coercion. Given the totality of circumstances surrounding appellant's statement of consent, we conclude the trial court did not err in overruling appellant's motion to suppress. We, therefore, overrule appellant's third issue.

In his fourth issue, appellant contends the trial court erred by allowing a police officer investigating the Shivers incident to opine that a field test of a substance yielded a positive reading for cocaine.

At the sentencing phase, the State identified through the investigating officer various items seized by police in appellant's apartment following the Shivers incident. Among these exhibits was the contents of a return envelope from the Texas Department of Public Safety (DPS) marked as State's exhibit 67. This envelope contained two envelopes marked as State's exhibits 67A and 67B. Each of these envelopes, in turn, held a baggy and each baggy contained a "white rock-like substance."

The substance in the baggies was tested by the DPS laboratory and by police in the field. Over objection, the investigating officer testified that a field test showed the substance was cocaine. During appellant's cross-examination of the investigating officer, counsel asked by leading question if a laboratory test of State's exhibit 67 produced a positive finding for cocaine. The officer responded, "I believe so."

A police detective conducted a crime scene investigation at appellant's apartment following the Shivers incident. Without objection, the detective testified that a photograph admitted in evidence depicted a white powdery substance found on the floor of appellant's apartment, which an officer at the scene believed was cocaine.

Assuming, but without deciding, admission of the investigating officer's testimony of the field test result was error, we find the error harmless as it did not effect a substantial right of appellant. *See* Tex. R. App. P. 44.2(b). Error effects a substantial right if it had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App. 1997). Because evidence of cocaine in appellant's apartment following the Shivers incident was admitted elsewhere in the sentencing phase

12

without objection, any error in allowing the testimony of the investigating officer as to the field test results was harmless. *See East v. State,* 702 S.W.2d 606, 611 (Tex.Crim.App. 1985) (admission of inadmissible evidence over a valid objection cannot amount to reversible error when the same facts are admitted elsewhere without objection).

Additionally, during the sentencing phase of trial the State's evidence of cocaine in appellant's apartment following the Shivers incident was but a portion of its case for a longer sentence. Through the State's other evidence, the jury learned of several adjudicated offenses and unadjudicated wrongful acts of appellant including two assaults, burglary, kidnapping, unlawful discharge of a firearm, marijuana possession, theft of copywritten music, failure to pay taxes, possession with intent to deliver cocaine, and bail jumping. Because the error, if any, in admitting the opinion of the investigating officer was harmless, we overrule appellant's fourth issue.

Conclusion

Having overruled appellant's four issues we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.

13