COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| CRISTINA MUNOZ, | | No. 08-09-00160-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 384th District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20070D00426) |
| | § | |

## O P I N I O N

Cristina Munoz appeals her conviction of possessing more than 50 pounds but less than 2,000 pounds of marihuana. Appellant waived her right to a jury trial and entered a negotiated plea of guilty. The trial court, in accordance with the plea agreement, assessed Appellant's punishment at imprisonment for a term of two years. For the reasons that follow, we affirm.

## FACTUAL SUMMARY

Appellant filed a motion to suppress complaining that marihuana and other evidence was unlawfully seized during a warrantless search of her property. Detective Gerald Humphry testified at the suppression hearing that he is employed by the El Paso Police Department and is assigned to the narcotics division. On the afternoon of January 22, 2007, Humphry conducted surveillance on a house in El Paso County and videotaped the activity occurring. He observed several individuals carrying large bales of what he believed to be marihuana. Humphry admittedly could not see the substance in the bales because they were wrapped in brown paper and covered with white plastic, but he had often seen marihuana packaged in this manner during his ten years in the narcotics division. Humphry saw individuals removing the bales of marihuana from a green van and carrying

them into the house through the side door.[1]  He continuously relayed what he saw to other police officers who were in the area.  A woman, later identified as Appellant, was among those seen unloading the bales of marihuana.  About twenty minutes later, Humphry saw the same individuals carrying what appeared to be bales of marihuana wrapped in black plastic out of the house and into the van.  Humphry believed the bales carried into the house earlier had been repackaged in black plastic.  Humphry stopped videotaping and went to assist the other detectives and police officers from his unit who had approached the house for the purpose of conducting a knock-and-talk.

Kyle Summers, a sergeant in the narcotics division, was one of the officers who approached the house.  The house was surrounded by a chain-link fence but the officers entered a front gate to the driveway which was "wide open."  Detectives approached the front door of the house while Summers and DEA Agent Jason Hoff[2] walked further down the driveway to the side yard where Humphry had seen people unloading marihuana.  The green van could be seen from the front gate and the driveway.  As he proceeded down the driveway toward the side yard, Summers could see bundles of marihuana in the van in plain view.  He watched a male carry a bundle and place it into the van.  Based upon the strong odor and his own training and experience, Summers believed the bundle was marihuana.  He also saw three females by the side door and a small child who was pushing a bundle of marihuana.  Summers, who was dressed in plain clothes, attempted to show his police identification to the individuals but one of them, later identified as Maria Alfaro, walked into the house.  Summers could see two men inside of the house who had been about to exit but they

---

[1]  Photographs show that the driveway is located along the entire front of the house and curves around the left-hand side of the house.  Witnesses, including Humphry, referred to the door as the rear door but photographs reflect that the door is actually located on the left-hand side of the house.  The green van was visible to any member of the public standing in the driveway.  The opinion will refer to this door as the side door and to this portion of the yard as the side yard.

[2]  Hoff is assigned to work with the El Paso Police Department's stash house task force.

turned and walked further inside of the house when they spotted Summers. Worried that the individuals who had retreated into the house were retrieving weapons or destroying evidence, Summers identified himself as a police officer and walked into the back of the residence. He also called for other officers to assist him which they did by securing the two men who had stopped in an open living area. Summers walked down a hallway in an effort to find Alfaro and found a puppy sitting in front of a closet door and wagging its tail. Summers called out "police" and told Alfaro to open the door and come out. Alfaro complied and he had her walk to the kitchen where detectives were talking to the other individuals.

Detective Frank Gutierrez is also assigned to EPPD's narcotics division. Gutierrez approached the residence and knocked on the front door while other officers went to the rear and sides of the house. Gutierrez explained that during a knock-and-talk, two detectives would usually make contact at the front door while other officers covered the sides and rear of the house to watch for fleeing suspects, dogs, or potential threats to the officers' safety. Given that the officers knew there were five or more people at the house, their concerns about safety were elevated. Gutierrez's approach at the front occurred simultaneously with Summer's approach to the side door. Waiting by the front door, Gutierrez could hear a "lot of activity" inside of the house and then Sergeant Pena opened the door from inside. Gutierrez entered and approached a group of eight people in the kitchen. He identified himself as a policy officer and asked who lived in the house. Appellant and two other women stated they lived in the house. Gutierrez advised the women of their rights and asked them for consent to search the house for drugs. Each of them, including Appellant, consented to a search of the house. Officers seized more than 1,000 pounds of marihuana as a result of the search.

Appellant testified at the suppression hearing that there was a fence surrounding her property,

but she admitted that the gate to the driveway was open on the day of the search and she had not posted any "no trespassing" signs on the property. At the conclusion of the hearing, defense counsel argued that the police officers entered onto the curtilage of the property without a warrant and the consent to search was not obtained until after the officers had illegally entered onto the property. The trial court denied the motion to suppress. Appellant waived her right to a jury trial and entered a negotiated guilty plea. The trial court followed the plea bargain and assessed Appellant's punishment at imprisonment for a term of two years.

## LEGALITY OF THE SEARCH

Appellant challenges the search and seizure by two related issues. In Issue One, she contends that her motion to suppress should have been granted because the officers breached the curtilage of the property by their initial entry. In Issue Two, Appellant maintains that the officers' warrantless entry through the side door violated the Fourth Amendment and rendered her subsequent consent to search invalid.

### *Standard of Review*

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review *de novo* application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex.Crim.App. 2005).

When the trial court has not made a finding on a relevant fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of

fact supported by the record.  *Herrera v. State*, 241 S.W.3d 520, 527 (Tex.Crim.App. 2007).  We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case.  *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App. 2006).

*Officers Initial Entry onto the Property*

Appellant's first issue challenges the officers initial entry onto the property through the gate. She argues that because the yard was enclosed with a fence, the officers could not enter through the open gate without a warrant.

The Fourth Amendment protects a person against unreasonable searches and seizures provided that the individual has a reasonable expectation of privacy in the thing searched.[3]  *Oliver v. United States*, 466 U.S. 170, 177, 104 S.Ct. 1735, 1740-41, 80 L.Ed.2d 214, 223 (1984).  The Fourth Amendment does not protect the merely subjective expectation of privacy, but only those expectations that society is prepared to recognize as reasonable.  *Oliver*, 466 U.S. at 177, 104 S.Ct. at 1741.  Thus, the litmus for determining the existence of a legitimate expectation of privacy as to a particular accused is twofold:  first, did he exhibit by his conduct an actual subjective expectation of privacy; and second, if he did, was that subjective expectation one that society is prepared to recognize as reasonable?  *Chapa v. State*, 729 S.W.2d 723, 727 (Tex.Crim.App.1987), *citing Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1987).  A defendant seeking to suppress evidence under the Fourth Amendment must show that he had a reasonable expectation of privacy that the government invaded.  *Luna v. State*, 268 S.W.3d 594, 603 (Tex.Crim.App. 2008).

The Fourth Amendment's protection includes a home.  *Oliver*, 466 U.S. at 180, 104 S.Ct. at

---

[3]  In Issues One and Two, Appellant also relies on Article I, Section 9 of the Texas Constitution, but she has not raised the argument in a separate issue or provided argument explaining why the Texas Constitution provides greater protection than the Fourth Amendment.  State and federal constitutional claims should be argued in separate grounds, with separate substantive analysis or argument provided for each ground.  *Muniz v. State*, 851 S.W.2d 238, 251-52 (Tex.Crim.App. 1993); *Heitman v. State*, 815 S.W.2d 681, 690-91 n.23 (Tex.Crim.App. 1991).  Because the argument based on Article I, Section 9 is inadequately briefed, we will restrict our analysis to the Fourth Amendment.

1742; *Porteous v. State*, 259 S.W.3d 741, 745-46 (Tex.App.--Houston [1st Dist.] 2007), *pet. dismissed as improvidently granted*, 253 S.W.3d 288 (Tex.Crim.App. 2008)(per curiam); *Washington v. State*, 152 S.W.3d 209, 214 (Tex.App.--Amarillo 2004, no pet.). The curtilage, which is the land immediately surrounding and associated with the home, warrants the same Fourth Amendment protections that attach to the house. *Oliver*, 466 U.S. at 182 n.12, 104 S.Ct. at 1743 n.12; *Bower v. State*, 769 S.W.2d 887, 896 (Tex.Crim.App. 1989), *overruled on other grounds*, *Heitman*, 815 S.W.2d at 685.

The protection afforded the curtilage is not unlimited. *Washington*, 152 S.W.3d at 214. Absent express orders from a person in possession of property not to trespass, a law enforcement officer, like any other member of the public, has the right to enter on residential property and knock on the front door for the purpose of contacting the occupants. *Cornealius v. State*, 900 S.W.2d 731, 733-34 (Tex.Crim.App. 1995); *Bower*, 769 S.W.2d at 897; *Duhig v. State*, 171 S.W.3d 631, 635 (Tex.App.--Houston [14th Dist.] 2005, pet. ref'd); *Washington*, 152 S.W.3d at 214. Because entry is impliedly authorized, there is no reasonable expectation of privacy with regard to things observed by those on the pathway to the front door. *Bower*, 769 S.W.2d at 897; *Washington*, 152 S.W.3d at 214. While a law enforcement officer can enter upon the curtilage of a house in an effort to contact its occupants, the authorization may not exist if the occupant has manifested his intent to restrict access to the area. *Washington*, 152 S.W.3d at 215, *citing Bower*, 769 S.W.2d at 897; *Nored v. State*, 875 S.W.2d 392, 397 (Tex.App.--Dallas 1994, pet. ref'd). Two examples of restricting access are locking a gate or posting signs advising that the entry is not welcome. *Washington*, 152 S.W.3d at 215.

It is undisputed that the officers entered the property through the open gate. Appellant did not have any signs posted on the property which would indicate any intention to prohibit access to

the property. Under these circumstances, the officers' initial entry onto the property was permissible because any member of the public could have accessed the property in this same fashion. We overrule Issue One.

*Warrantless Entry of the Side Yard and House*

In her second issue, Appellant maintains that even if the initial entry through the gate was permissible, the officers violated the Fourth Amendment by proceeding down the driveway to the side door and by entering the house without a warrant. We will first address whether the officers violated the Fourth Amendment by going into the side yard.

Citing *State v. Peyrani*, 93 S.W.3d 384 (Tex.App.--Houston [14th Dist.] 2002, pet. ref'd), Appellant contends that the officers could approach the side door only after making an unsuccessful attempt to contact the occupants at the front door. In *Peyrani*, the police received a tip that large quantities of marijuana were being stored at and transported from a house in Harris County. The police began conducting surveillance but they could not see any activity in the backyard because it was surrounded by a wooden privacy fence. At one point, the police observed a car arrive at the house. Two men exited the car and carried a heavy-looking bag to the backyard. They later returned with two brick-like packages which appeared to be marihuana. After the men left the house, police stopped their car at a nearby restaurant and found more than eleven pounds of marihuana. The police did not attempt to obtain a search warrant but instead attempted to gain consent to search the house. Two officers walked through the open front gate at the driveway and down the front walkway. As they approached the front door, they saw a man walking beside the house from the backyard. The officers stepped off the front walkway, onto the grass, and approached the man. After determining the man was not the homeowner, the officers proceeded to the backyard because they could hear voices and they knew from their earlier surveillance that people were in the backyard. When they

rounded the back corner of the house, they saw the defendant and several other men loading bundles of marihuana into a vehicle. Both officers testified that they walked into the backyard only to obtain consent to search and did not expect to find marihuana, despite their observations throughout the day. The trial court granted the defendant's motion to suppress and the State appealed. The Fourteenth Court of Appeals affirmed, holding that the officers' entry into the backyard violated the Fourth Amendment because they deviated from the path to the front door. *Peyrani*, 93 S.W.3d at 387. The instant case is distinguishable for two reasons: first, because the green van could be seen from the open gate and the side yard was partially visible from the path to the front door, and second, some officers went to the front door while the officers in question proceeded simultaneously to the side door. Thus, *Peyrani* is inapplicable.

Citing *Atkins v. State*, 882 S.W.2d 910 (Tex.App.--Houston [1st Dist.] 1994, pet. ref'd), the State counters that the Fourth Amendment is not violated where officers simultaneously approach the front and side or rear doors of a residence in an effort to make contact with the occupants. In *Atkins*, police officers went to a residence to investigate after receiving an anonymous tip that cocaine and heroin were being sold from the residence. One officer went to the front door where people were seated outside and a second officer walked around the side of the house toward the back door. When the second officer turned the corner he saw the defendant exit the back door. Upon seeing the officer, the defendant dropped two baggies of heroin and re-entered the house. The officer seized the heroin, followed the defendant inside, and arrested him for possession of heroin. The defendant urged on appeal that because the second officer violated the curtilage by being in the back yard without a warrant, the subsequent seizure of the heroin was unlawful. The court of appeals held that the evidence supported an inference that the second officer was making a joint initial attempt to contact the inhabitants of the house as sanctioned in *Long*. *Atkins*, 882 S.W.2d at 913.

Here, the green van in which the marihuana was being loaded could be seen by the officers and any member of the public from the open driveway gate and the front of the house. Through surveillance, the police had just observed people carrying bundles believed to be marihuana from the green van into the house. Summers and Hoff approached the green van and side yard by going from the open gate down the driveway which ran parallel to the front of the house. The driveway was the obvious path to the side yard. We conclude that the officers did not violate the Fourth Amendment by approaching the side yard and door as the evidence supports a reasonable inference that they were making a joint initial attempt to contact the occupants of the house who had just been seen in that area. *See Atkins*, 882 S.W.2d at 913. Furthermore, the officers did not go to the side yard and door for the purpose of conducting a search but to provide security for the officers engaging in the knock-and-talk at the front door and to ensure that none of the occupants fled out of the side door. *See Valdez v. State*, No. 08-02-00215-CR, 2003 WL 361294, *4 (Tex.App.--El Paso February 20, 2003, no pet.)(where police officers went to a residence to investigate a loud noise complaint and saw through the uncovered windows that several minors were drinking, one officer went to front door and other officer went to side door to cover the exit; when one individual opened side door to flee, the second officer observed the defendant in the kitchen concealing a plastic bag of cocaine in a kitchen cabinet; held that initial intrusion of curtilage was lawful because the second officer was not conducting a search but was covering the exit).

We turn now to address whether Summers' warrantless entry into the house violated the Fourth Amendment. The State argues that Summers had probable cause to suspect criminal activity and had exigent circumstances to justify his warrantless entry into the house.

Exigent circumstances is one of the recognized exceptions to the Fourth Amendment's warrant requirement. *McGee v. State*, 105 S.W.3d 609, 615 (Tex.Crim.App. 2003), *citing Minnesota*

*v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Under the exigent circumstances doctrine, the State may justify a warrantless search or entry of a specific location if it makes a two-step showing. First, the State must show that probable cause existed to enter or search the specific location at the time the search was made. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex.Crim.App. 2007). In the context of warrantless searches, probable cause exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality or evidence of a crime will be found. *Id.* at 685; *Estrada v. State*, 154 S.W.3d 604, 609 (Tex.Crim.App. 2005). Second, the State must show the existence of exigent circumstances which required an immediate entry into a particular place without a warrant. *Id.* at 685. The Court of Criminal Appeals has identified three categories of exigent circumstances that justify a warrantless intrusion by law enforcement officers: (1) providing aid or assistance to persons whom law enforcement reasonably believes are in need of assistance; (2) protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous; and (3) preventing the destruction of evidence or contraband. *Id.* If the State does not adequately establish both probable cause and exigent circumstances, a warrantless entry will not withstand judicial scrutiny. *Id.* at 685-86.

We will first examine whether probable cause existed to believe that evidence of a crime would be found in the residence. The officer conducting surveillance, Detective Humphry, observed several individuals--including Appellant--carrying bundles of what Humphry believed to marihuana from the green van into the house. A short while later, Humphry observed bundles being loaded back into the van. Humphry believed the marihuana bundles had been repackaged. As Summers approached the side yard, he could see bundles of marihuana in the van in plain view and he could smell a strong odor of marihuana coming from the van. He also saw a man loading a bundle of

marihuana into the van and a child by the door pushing a bundle. Based on his training and experience, Summers believed the substance in the bundles to be marihuana. Based on the totality of the circumstances Summers had probable cause to believe that a criminal offense was being committed and evidence or contraband, specifically marihuana, would be found inside of the house.

The only remaining issue is whether exigent circumstances justified the warrantless intrusion by the officers. The State asserts that a warrantless entry was justified to prevent the destruction of evidence and to protect the police officers from individuals believed to be armed and dangerous. With regard to the possible destruction of evidence as an exigent circumstance, the State must show that the police could have reasonably concluded that evidence would be destroyed or removed before they could obtain a search warrant. *McNairy v. State*, 835 S.W.2d 101, 107 (Tex.Crim.App. 1991). Relevant factors include: (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic. *Id.*, *citing United States v. Rubin*, 474 F.2d 262, 268 (3rd Cir. 1973).

The officers observed marihuana being loaded into the van thereby permitting an inference that the marihuana was in the process of being removed from the house. Given that Summers approached the people at the side door where marihuana was being loaded into the van and identified himself, the occupants were aware that the police had knowledge of the marihuana. After Summers identified himself, one of the women standing at the side door went inside of the residence and two men who had been about to exit turned and walked back further into the house. Summers

specifically testified that he followed the individuals who went into the residence because he was concerned that they might try to destroy evidence. This was a reasonable conclusion under the circumstances. *See Estrada*, 154 S.W.3d at 610 (evidence supported conclusion that warrantless entry was justified to prevent destruction of evidence where two minors told officer that they drank alcoholic beverages and smoked marijuana at defendant's residence, defendant smelled of marijuana, officer heard people inside defendant's residence but no one answered door when he knocked, and when officer returned later to investigate he observed people attempting to leave the residence).

This same evidence, combined with the officers' knowledge that there were more than five people present at the residence, also supports a conclusion that the Summers' warrantless entry was justified because of a concern that the individuals who retreated into the house could be securing a weapon and would pose a threat to the other officers on the scene. *See Estrada*, 154 S.W.3d at 610 (exigent circumstances existed where officer had received information from the defendant's friends that there were a number of people inside the house, and he wanted to be able to see and identify them for his safety as he investigated the situation). Because the State established the exigent circumstances exception to the warrant requirement, the officers' warrantless entry into the house did not violate the Fourth Amendment. We overrule Issue Two and affirm the judgment of the trial court.

October 20, 2010

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)