Opinion issued July 28, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00497-CR

———————————

Cecil Walter Max-George, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 232nd District Court

Harris County, Texas



Trial Court Case No. 1246004

 



 

MEMORANDUM OPINION

          A
jury found appellant, Cecil Walter Max-George, guilty of possession of
marijuana in an amount of more than four ounces and less than five pounds.[1]  After finding the enhancement paragraphs
true, the jury assessed appellant’s punishment at twenty years’ confinement and
a $5,000 fine.  In three issues,
appellant argues that (1) the trial court erred in refusing to include his
requested instruction under Texas Code of Criminal Procedure article 38.23; (2)
the trial court abused its discretion in admitting evidence of firearms and
ammunition seized from appellant’s residence because it affected the jury’s
finding on punishment; and (3) the trial court abused its discretion in denying
appellant’s motion for a continuance.

          We affirm.

Background

On December 26, 2009, at around
2:30 a.m., Deputy S. Brown, of the Harris County Sheriff’s Office, was sitting
in a parking lot in his patrol car writing reports when he observed a man
looking into a vehicle with a flashlight. 
The vehicle was parked in front of a closed business that was part of a
strip mall.  As Deputy Brown approached
to investigate, he was met by appellant, who had come from inside the
building.  Deputy Brown identified
himself and asked appellant what he was doing, and appellant told Deputy Brown
that he was looking inside his friend’s car. 
Deputy Brown also smelled burnt marijuana coming from appellant’s
person.  Deputy Brown asked appellant for
his identification, but appellant told him that it was inside the business and
that he would go get it.  Appellant
entered the building and Deputy Brown followed. 
Appellant gave Deputy Brown his identification, and Brown noticed a
“very strong odor of unburnt marijuana” inside the building.  Deputy Brown also observed a small amount of
marijuana in plain view on a bookshelf to the left of the door.  

At that time, Deputy Brown asked
appellant and another man who was present in the front room of the building to
step outside while he checked for outstanding warrants.  As the men complied, other officers began to
arrive.  The officers asked appellant if
any other people remained inside the building. 
Appellant told them that there were others inside the building, so Deputy
Brown and Deputy B. Frazur once again entered the building to find its other
occupants.  Deputy Brown testified that
they did so because “if there is anything illegal in there or we also need to
check to make sure, I mean, there’s nobody else in there.  It’s an officer safety issue to see what’s
inside.”  He testified that they did not
search for any illegal items or materials at that time—they performed a “protective sweep” in which
they looked only for people.  Deputies
Brown and Frazur found two other people hiding in a restroom, checked them for
concealed weapons, and escorted them outside the business.  In the course of checking the premises for
other people, Deputy Brown notice several potted marijuana plants, but he
testified that he did not count them at that time because he was focused on
looking for people.

Deputies Brown and Frazur left the
building after they completed their protective sweep and contacted officers
with the narcotics division of the Sheriff’s Office.  Once the narcotics officers arrived, they
sought a search warrant based on Deputy Brown’s observation in the course of
his encounter with appellant and the three other men.  Once they had the search warrant, the
officers returned to the building and searched the premises for illegal
narcotics and weapons.  The officers
discovered fifty-nine marijuana plants, heat lamps and other marijuana growing
paraphernalia, two semiautomatic handguns, and a shotgun.  

Article 38.23 Charge Instruction

          In
his first issue, appellant argues that the trial court erred in denying his
request for an instruction pursuant to Code of Criminal Procedure article
38.23.

A.      Facts
Relevant to Appellant’s Claim of Charge Error

          Appellant
argues that the evidence at trial raised a disputed fact issue regarding
whether he gave Deputy Brown consent to enter the building, and he was,
therefore, entitled to an instruction under article 38.23.

Prior to trial, appellant, who
represented himself before the trial court, moved to suppress the evidence
obtained by the officers pursuant to the search warrant, arguing that Deputy
Brown’s initial entry into the building was unlawful.  At the suppression hearing, Deputy Brown
testified that, after he asked appellant for his identification, appellant went
into the building to get it and Brown followed directly behind him.  He testified that appellant did not express
in any way that Brown was not to come into the building, appellant did not shut
the door behind him, and appellant never told him to get out of the office building
once he had entered.  

On cross-examination, Deputy Brown
stated that he followed appellant because it was the middle of the night and
appellant was using a flashlight to look around, which Brown considered
suspicious, and because he had a suspicion that the business might not actually
belong to appellant or that appellant could have been breaking into the vehicle
or the business.  When appellant asked
him, “What gave you the right to go into the office?”, Deputy Brown testified,
“It’s an officer safety issue.  I don’t
know what’s inside.”

Appellant also testified at the
suppression hearing.  He stated that one
of the other men present in his building had gone out to the car to find his
cigarettes and that he did not have a flashlight.  After the other man returned to the building,
appellant noticed Deputy Brown arrive outside and went outside to meet
him.  After the deputy asked him for identification,
appellant stated, “[I]t’s in my office, let me get it.  Wait right here.”  Appellant testified that the door closed on
its own behind him after he entered the building and that Deputy Brown “barged
in” and told the other man “to get out.” 
Appellant stated that he then told the deputy, “Hey, listen, you need to
get out.  This is my business.  This is where I live at.”  After appellant handed the deputy his
business card, he again told the deputy to get out of the building.  He concluded by telling the trial court that the
officers never offered him a consent to search form and that he never gave the
officers consent to enter his office, not even impliedly.  The trial court denied appellant’s motion to
suppress.

At trial, Deputy Brown testified
that, after he asked appellant for identification, appellant went inside the
building to get it, and Brown followed him in. 
When Deputy Brown entered the building, he saw a bed where appellant’s
three-year-old son was sleeping.  

On cross-examination, in response
to appellant’s question whether Deputy Brown felt that it was an emergency
situation, Brown testified he did not feel that he needed to have his gun drawn
as he approached appellant.[2]  Deputy Brown also testified that appellant
never gave him verbal consent to enter the building and when appellant asked,
“And you didn’t have my consent to come inside my building, am I correct?”,
Deputy Brown answered, “Correct.”  Brown
also testified that appellant did not affirmatively “do anything to tell [him]
not to be there.”  Brown testified that
appellant did not tell him to wait outside or otherwise indicate that he should
not follow and that appellant did not try to close the door behind him or try
to stop Brown from entering in any way.  

After appellant rested his case in
chief, appellant asked the trial court to address his requested instruction,
which provided in relevant part:

A
peace officer making an arrest without a warrant may not enter a residence to
make the arrest unless a person who resides in the residence consents to the
entry or exigent circumstances require that the officer making the arrest enter
the residence without the consent of a resident or without a warrant.

Exigent
circumstances is defined as an emergency situation.

Our
law provides that in any case where the jury believes the evidence [was]
obtained by an officer or other person in violation of any provisions of the
constitution or laws of the State of Texas, or of the constitution or laws of
the United States of America, or has a reasonable doubt that the evidence was
obtained in violation of the provisions stated above, the jury shall disregard
any such evidence so obtain[ed].

 

After making some arguments
regarding the sufficiency of the affidavit supporting the search warrant, the
trial court concluded, “And we’ve heard all of the evidence that anybody had to
offer [about the affidavit for the search warrant].”  Appellant then stated, “Okay.  But he explicitly stated he did not get my consent
to search.”  The State pointed out that
appellant had failed to present any affirmative evidence controverting Deputy
Brown’s version of events leading up to his initial entry into the building,
but had only cross-examined the witnesses. 
Appellant then cited the Fourth Amendment and article 38.23, stating, “[I]f
this evidence was obtained in violation of the law—.”  The
trial court stated: “And there is no evidence that there’s been anything obtained
in violation of the law.”

          At
this time, appellant pointed out that he had not given his testimony on the
issue before the jury and that he had not been aware that he was allowed to
testify.  The State asked that appellant
be allowed to re-open the case.  The
trial court granted the request.

Appellant testified that after
Deputy Brown asked for his identification, appellant told Brown to “wait right
here” and “let me go get it.”  Appellant
testified that the door closed completely behind him and that he was getting
his business card off the desk when Deputy Brown “barged in stating to [the
other man in the room] to ‘Get outside now.’” 
Appellant turned to Deputy Brown and said, “Hey, what are you doing? I
told you I own the business.  You need to
get out.  I live here.”  After Deputy Brown asked him to step outside,
appellant replied, “I’m not going anywhere. 
Don’t you see my son is sleeping right here?”  Appellant testified that after he again
refused to step outside at Deputy Brown’s request Deputy Frazur arrived, became
“enraged” when appellant refused to leave, “charged at [appellant], stepping on
the bed, waking up [appellant’s] son,” and forcibly removed appellant from the
room.  Appellant further testified that no
officer asked him to give consent to search until approximately 7:30 a.m. and
that he refused his consent at that time.

          After
he testified, the trial court again asked if there were any objections to the
charge.  Appellant again stated that he
wanted an article 38.23 instruction included “based on the issue that there is
a dispute concerning whether the evidence was obtained within the legal means
of the law.”  The State responded that
there was “no contradictory statement by the Defense stating anything to the
opposite of what the officers have stated” and that the determination of
whether the evidence was legally obtained is an issue of law that had already
been ruled on.

          The
following colloquy occurred:

[appellant]:           [T]he officer stated that he never
got my consent to come in.  And I believe—

 

[trial
court]:          I believe the search was
done pursuant to warrant, was it not?

 

[appellant]:           [T]he illegal entry wasn’t done
pursuant to a warrant.  It was done
pursuant to—basically there was no consent, no authority, there was nothing.  In fact . . . it was derived from the
exploitation of an illegal entry. . . .

 

[trial
court]:          Is there any dispute that
he asked for identification, someone came in and he followed that person in?

. . . .

 

[appellant]:           Yes, exactly, Your Honor.  But at no time did I state that he had my
consent to follow me.

 

[trial court]:                   Did he follow some other
person in?

 

[appellant]:           No, he followed me in, Your
Honor.  And at that time I informed him .
. . that I was the business owner outside. 
And I also stated that when he came in and barged in, that you need to
get out.  He did not.

 

[prosecutor]:        The State stands by its previous
argument, Your Honor, that there is no material issue here and that the
Defendant has not presented evidence which entitles him to the charge.

 

The trial court then denied appellant’s requested
charge.

          On
appeal, appellant argues that he was entitled to the article 38.23(a)
instruction because “there was a factual dispute regarding the legality of
. . . Officer Brown’s initial entry into appellant’s
home/business, which is how Brown developed probable cause to obtain a search
warrant for the premises.”

B.      Standard
of Review

          We
review jury charge error in a two-step process. 
Ngo v. State, 175 S.W.3d 738,
744 (Tex. Crim. App. 2005).  First we
determine whether error exists in the charge. 
Id.  If there is error, we then review the record
to determine whether sufficient harm was caused by the error to require
reversal of the conviction.  Id. 
When the accused has properly objected to the error in the jury charge,
reversal is required unless the error was harmless.  Id. at
743; see also Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1984) (discussing harm analysis on issues of
charge error).  However, if no objection
was made at trial, reversal is proper only if the error is so egregious and
created such harm that it might be fairly said that the defendant did not have
a fair and impartial trial.  Almanza, 686 S.W.2d at 171.

C.      Right to
Instruction under Article 38.23

          Article
38.23 provides:

No evidence obtained by an
officer or other person in violation of any provisions of the Constitution or
laws of the State of Texas, or of the Constitution or laws of the United States
of America, shall be admitted in evidence against the accused on the trial of
any criminal case.

 

In any case where the legal
evidence raises an issue hereunder, the jury shall be instructed that if it
believes, or has a reasonable doubt, that the evidence was obtained in
violation of the provisions of this Article, then and in such event, the jury
shall disregard any such evidence so obtained.

 

Tex. Code Crim. Proc. Ann. art.
38.23(a) (Vernon 2005).  A defendant’s
right to the submission of an instruction under article 38.23(a) “is limited to
disputed issues of fact that are material to his claim of a constitutional or
statutory violation that would render evidence inadmissible.”  Jones
v. State, 338 S.W.3d 725, 740 (Tex. App.—Houston [1st Dist.] 2011, pet.
filed) (quoting Madden v. State, 242
S.W.3d 504, 509–10 (Tex. Crim. App. 2007)).

To be entitled to the submission of
a jury instruction under article 38.23, the appellant must meet three
requirements: (1) the evidence heard by the jury must raise a fact issue; (2)
the evidence on that fact must be affirmatively contested; and (3) that
contested factual issue must be material to the lawfulness of the challenged
conduct in obtaining the evidence.  Id. (citing Madden, 242 S.W.3d at 510). 
“[I]f other facts, not in dispute, are sufficient to support the
lawfulness of the challenged conduct, then the disputed fact issue is not
submitted to the jury because it is not material to the ultimate admissibility
of the evidence.”  Madden, 242 S.W.3d at 510. 
Thus, the disputed fact must be essential to determining the lawfulness
of the challenged conduct.  Id. at 511.

          The
Fourth Amendment will tolerate a warrantless search if the police (1) have
probable cause coupled with exigent circumstances; (2) have obtained voluntary
consent; or (3) conduct a search incident to a lawful arrest.  Gutierrez
v. State, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007).  Here, it is undisputed that Deputy Brown did
not make his initial entry into the building incident to an arrest, but
appellant’s consent would be immaterial if Brown had probable cause coupled
with exigent circumstances.

In this context, probable cause
exists “when reasonably trustworthy facts and circumstances within the
knowledge of the officer on the scene would lead a man of reasonable prudence
to believe that the instrumentality . . . or evidence of a crime will be found.”  Id.;
Estrada v. State, 154 S.W.3d 604, 609
(Tex. Crim. App. 2005) (quoting McNairy
v. State, 835 S.W.2d 101, 107 (Tex. Crim. App. 1991)).  Situations creating exigent
circumstances usually include factors pointing to some danger to the officer or
victim, an increased likelihood of apprehending a suspect, or the possible
destruction or removal of evidence.  McNairy, 835 S.W.2d at 106.

Deputy Brown testified that he
observed a man using a flashlight to look into a car parked in front of a
closed business at 2:30 in the morning the day after Christmas, and that this
was suspicious behavior.  He also
testified that, as appellant approached him, he noticed that appellant smelled
strongly of burnt marijuana.  This
testimony was sufficient to establish probable cause.  See
Estrada, 154 S.W.3d at 609 (holding that evidence of smell of marijuana
along with other observations of suspicious activities established probable
cause).

At the suppression hearing, Deputy
Brown also testified that he followed appellant into the building’s office
because he had a suspicion that the business might not actually belong to
appellant or that appellant could have been breaking into the vehicle or the
business, and because it was the middle of the night and appellant was using a
flashlight to look around, which was also suspicious.  When appellant asked him, “What gave you the
right to go into the office?”, Deputy Brown testified, “It’s an officer safety
issue.  I don’t know what’s inside.”  At trial, Deputy Brown testified that when he
saw someone outside the closed business, he was not sure what to think because
“there’s graffiti in the area.  Possibly
could be breaking into a building, could be breaking into the vehicle.”  Deputy Frazur, who arrived while Deputy Brown
was inside the office with appellant, testified that for reasons of officer
safety, he wanted to be able to clearly see appellant and the other officers at
all times.

Based on this testimony, the trial
court reasonably could have found that Deputy Brown’s warrantless entry was
justified by the need to protect himself from a suspicious person who might
have been going inside the building to retrieve a weapon, to prevent appellant
from escaping following a theft of a vehicle or business, or to prevent appellant
from destroying evidence of a potential theft or drug related crime.  See
Estrada, 154 S.W.3d at 609; cf. Miles
v. State, 241 S.W.3d 28, 42 (Tex. Crim. App. 2007) (observing that exigent
circumstances requiring immediate arrest include theft offenses in which
perpetrator may disappear along with stolen property) (citing Tex. Code Crim. Proc. Ann. art. 18.16
(Vernon 2005)); see also United States v.
Blount, 123 F.3d 831, 838 (5th Cir. 1997) (“The exigent circumstances
analysis focuses upon the reasonableness of the officers’ investigative tactics
leading up to the warrantless entry.”).

          We observe
that appellant did not argue that there was no probable cause or exigent
circumstances before the trial court or on appeal.  We hold that, based on Deputy Brown’s
uncontroverted testimony on these issues, the trial court could have properly concluded
that the initial entry into the building was permissible because the State
established both probable cause and exigent circumstances.  Therefore, the trial court did not err in
concluding that the question of appellant’s consent was immaterial in
determining whether the initial entry was lawful.[3]  See
Madden, 242 S.W.3d at 510 (holding that when facts not in dispute support admissibility
of evidence, disputed fact issue is not submitted to jury because it is not
material to ultimate admissibility of evidence); Gutierrez, 221 S.W.3d at 685 (providing that consent to search and
existence of probable cause coupled with exigent circumstances are both
exceptions to Fourth Amendment’s prohibition against warrantless searches).  

          We
overrule appellant’s first issue.

Admission of Firearms and Ammunition

In his second issue, appellant
argues that the trial court erred in admitting the two handguns and related ammunition
into evidence.

A.      Facts
Relevant to Admission of Firearms and Ammunition

Deputy Brown testified that
officers discovered “two pistols, semiautomatic pistols and a shotgun” during
their search of the building, and he testified to the general location where
the shotgun was found.  Appellant did not
object to this testimony.  The shotgun
itself was admitted into evidence, and appellant affirmatively stated that he
had no objection to its admittance into evidence.

The State also sought to admit the
two handguns and the associated ammunition and magazines.  At that point, appellant objected on the
basis that the exhibits were highly inflammatory and had “nothing to do with
the current case.” The State responded that the weapons “were out of the same
transaction” as the marijuana charge and that “the fact that he has pistols and
weapons in his possession at the same time as the marijuana goes to the basis
of the case that this is one large act by [appellant] to create marijuana, to
grow marijuana, to have the protection needed to continue an operation like
this.”  The trial court overruled
appellant’s objection.

B.      Standard
of Review

We review a trial court’s decision
to admit evidence for an abuse of discretion. 
Shuffield v. State, 189 S.W.3d
782, 793 (Tex. Crim. App. 2006).  A trial
court abuses its discretion only if its decision is “so clearly wrong as to lie
outside the zone within which reasonable people might disagree.”  Taylor
v. State, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).  If the trial court’s decision is correct on
any theory of law applicable to the case, we will uphold the decision.  De La
Paz v. State, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).  Furthermore, improper admission of evidence
is harmless if the same or similar evidence is admitted without objection at
another point in the trial.  Smith v. State, 236 S.W.3d 282, 300
(Tex. App.—Houston [1st Dist.] 2007, pet. ref’d) (citing Leday v. State, 983 S.W. 713, 717 (Tex. Crim. App. 1998)).

C.      Analysis

          Appellant
objected to the introduction of the handguns and ammunition themselves into
evidence on the basis that these exhibits were highly inflammatory and had
“nothing to do with the current case.”  However,
appellant did not object to Deputy Brown’s testimony that the police found
weapons and ammunition when they searched the premises.  Appellant also affirmatively stated that he
had no objection to the admittance of the shotgun into evidence.  Thus, the jury heard unobjected-to evidence
that weapons and ammunition were found in appellant’s building.  We conclude that any potential error made by
the trial court in admitting the handguns and ammunition was harmless because
similar evidence was admitted without objection.  See id.

          We
overrule appellant’s second issue.

Motion for Continuance

          In
his third issue, appellant argues that the trial court erred in denying his
motion for continuance. 

A.      Facts
Relevant to Motion for Continuance

          Appellant
filed a motion for continuance on May 24, 2010, nine days before the trial
began on June 1, 2010.  He claimed that he
had subpoenaed “Sean Everett Lowery” and “Jarel Holmes,” two of the other individuals
who were present at his business when Deputy Brown arrived and who were also removed
from the building.  

In his motion, appellant argued
that the two individuals were material defense witnesses, and he stated that
“through due diligence [appellant] requested that [the witnesses] be procured
to give testimony in any hearing held on [appellant’s] behalf.”  The motion also listed the matters on which
appellant wanted the witnesses to testify—i.e. “about what time did the witnesses arrive at [appellant’s] warehouse,”
“who did the witnesses arrive with,” “in what manner did the deputy come into
[appellant’s] office,” and other similar questions.    The
motion stated that the witnesses were not absent by the procurement or consent
of appellant, requested the State to provide the addresses of the witnesses,
and stated that the motion was not made for purposes of delay.  Appellant sought a thirty-day continuance,
signed the motion, and included his unsworn declaration that “the foregoing is
true and correct” under penalty of perjury. 

Appellant also made arguments in
support of his motion for continuance on the record.  Appellant again repeated the list of topics
on which he would ask Lowery and Holmes to testify, but he did not make any
statement or provide any evidence regarding what their actual testimony on
those topics would be.  During
appellant’s argument in support of his motion, he also stated that the subpoena
he issued for both Lowery and Holmes was for them to appear for pretrial
proceedings.  There was no evidence that
he had attempted to subpoena them for trial.

B.      Standard
of Review

          We
review the trial court’s ruling on the motion for continuance for an abuse of
discretion.  Janecka v. State, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996); see Harrison v. State, 187 S.W.3d 429,
433–34 (Tex. Crim. App. 2005).  To
establish an abuse of discretion, an appellant must show that he was actually
prejudiced by the trial court’s ruling.  See Janecka, 937 S.W.2d at 468.  A criminal action may be continued on the
written motion of a party for sufficient cause shown.  Harrison,
187 S.W.3d at 434 (citing Tex. Code. Crim. Proc. Ann. art. 29.03
(Vernon 2006)).  The motion must be sworn
to by someone who has personal knowledge of the facts relied on for the
continuance.  Id. (citing Tex. Code. Crim. Proc. Ann. art. 29.08
(Vernon 2006)).

          When
the defendant’s motion for continuance is based on an absent witness, it is
necessary to show (1) that the defendant has exercised diligence to procure the
witness’s attendance; (2) that the witness is not absent by the procurement or
consent of the defense; (3) that the motion is not made for delay; and (4) the
facts expected to be proved by the witness. 
Id.  It must appear to the trial court that
the facts expected to be proved are material. 
Id.; see Tex. Code Crim. Proc.
Ann. art. 29.06 (Vernon 2006).  “Mere conclusions and general averments
are not sufficient for the court to determine their materiality, and the motion
for continuance must show on its face the materiality of the absent
testimony.”  Harrison, 187 S.W.3d at 434.

          Appellant’s
motion for continuance made only general averments regarding the questions that
appellant would ask Lowery and Holmes. 
Appellant did not provide any statement at all of the facts he expected
Lowery and Holmes to prove, either with his motion or in his argument before
the trial court.  Thus, the trial court
had no basis on which to determine whether any facts Lowery and Holmes would
admit into evidence would be material.  

Furthermore, appellant stated in
his argument before the trial court that the subpoenas referenced in his motion
were for a pretrial appearance, and there is no evidence in record that
appellant attempted to subpoena Lowery and Holmes to appear at trial.  Thus, appellant failed to demonstrate that he
exercised diligence to procure Lowery and Holmes’ attendance.  We conclude that the trial court did not err
in denying the motion for continuance.  See id.

We overrule appellant’s third
issue.

 

 

 

Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Matthews.[4]

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]           See
Tex. Health & Safety Code Ann.
§ 481.121(b)(3) (Vernon 2009).





[2]           Appellant represented himself at
trial.





[3]
          We note that, on appeal,
appellant does not challenge the sufficiency of the warrant, nor does he
challenge the trial court’s ruling on the motion to suppress.

 





[4]
          The Honorable Sylvia Matthews,
Judge of the 281st District Court of Harris County, sitting by assignment.