Court of Appeals
Fourth Court of Appeals District of Texas



# MEMORANDUM OPINION

No. 04-10-00540-CR

Christopher Ray **CLARK**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2008CR5773
Honorable Ron Rangel, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Phylis J. Speedlin, Justice
Rebecca Simmons, Justice

Delivered and Filed:  July 25, 2012

AFFIRMED

A jury convicted Christopher Ray Clark of two counts of possession with intent to deliver

cocaine. On appeal, Clark complains the trial court erred in denying his motion to suppress

evidence and in disallowing expert witness testimony. We affirm.

## BACKGROUND

In January 2008, Clark was a student at the University of Texas at San Antonio. He was

living in apartments operated by the university. Clark shared a four-bedroom apartment with his

brother, Matthew Clark, and two other students. Clark's apartment was located on the second story of the building. On January 25, 2008, university police conducted a warrantless search of Clark's bedroom, where they found cocaine, a handgun, ammunition, a stun gun, and $517.00 in cash. Clark was indicted for two counts of possession with intent to deliver cocaine, and pleaded not guilty. Clark filed a motion to suppress the evidence obtained in the search.

At the suppression hearing, the State called Officer Matthew Stacy to testify. Officer Stacy testified that in January 2008 he was employed as a University of Texas at San Antonio police officer. On January 25, 2008, Officer Stacy was on foot patrol at the student apartments where Clark resided. While walking on the ground floor in a common area outside of an apartment building, Officer Stacy smelled the odor of burnt marijuana. Officer Stacy was able to discern the source of the odor based on the strength of the odor, and signs of activity from inside one of the apartments on the second floor. Officer Stacy walked up the stairs toward this apartment. When Officer Stacy reached the top of the stairs and started approaching the apartment door, the door opened and two men appeared in the doorway, apparently ready to leave. As the door opened, the odor of marijuana emanated from inside the apartment, and it was very strong. Because the door was open, Officer Stacy was able to see inside the apartment. About five feet inside of the doorway, Officer Stacy saw "loose marijuana, seeds and stems," a "half-smoked marijuana blunt," and a baggy which he believed to contain marijuana on the top of a coffee table. Two people were seated on a couch near the coffee table. Officer Stacy entered the apartment and pulled the coffee table away from the couch. Officer Stacy instructed the two men who were leaving the apartment to sit down. He then called additional officers to the scene.

When the additional officers arrived, Officer Stacy conducted a protective sweep of the apartment. In Clark's bedroom, Officer Stacy saw a digital scale and a box of sandwich bags on

the desk, and a lockbox beside the desk. Officer Stacy asked Clark for consent to search his bedroom. Clark did not refuse, but stated that he would like to talk to his father.

While Officer Stacy was leaving the apartment to begin the process of obtaining a search warrant, Clark's mother and father arrived on the scene. Officer Stacy allowed Clark to talk to his father. After talking to his father, Clark told Officer Stacy he was "okay" with going ahead with the search. Clark then read and signed a document giving the officers consent to search his bedroom. During the search, Officer Stacy asked Clark what was in the lockbox, and Clark told him it contained cash. Clark then went to the living room, brought back a key, and opened the lockbox. Clark also told Officer Stacy there was a handgun and cocaine in his desk drawer. In searching Clark's bedroom, Officer Stacy found cocaine, a handgun, ammunition, a stun gun, and $517.00 in cash.

The defense called witnesses to testify, including Clark and three of his family members. Clark testified Officer Stacy asked him for consent to search his bedroom two or three times; however, he never gave the officers verbal consent to search his bedroom. Clark acknowledged that he talked to his father at the scene and that his father tried to persuade him to consent to the search. According to Clark, he and his father argued about whether he should give the officer consent to search his bedroom. Clark pleaded with his father not to give the officer consent. Nevertheless, Clark's father gave Officer Stacy verbal consent to search the bedroom. Clark did not dispute that he read and signed the consent to search form; however, Clark indicated he did so only after the search was underway, and only because the officers told him that he had to sign it because his father had already given consent to search.

Consistent with Clark's testimony, Clark's father and mother testified that Clark's father, not Clark, gave Officer Stacy verbal consent to search Clark's bedroom.

Clark's brother, Matthew, testified that he, not Clark, gave the officer the key to the lockbox. Matthew testified that the lockbox which contained the $517.00 in cash belonged to him rather than to Clark. Matthew testified he heard Clark repeatedly tell the officers he was not going to let them search his bedroom. And, according to Matthew, Clark did not sign the consent form until after the search was completed, and the officers told Clark he had to sign the consent to search form.

Similarly, Fabian Rocha, a friend of Clark's who was present during the search, testified the officers told Clark he had to sign the consent to search form. Rocha further testified that he heard Clark tell the officers, "You can't search my room."

The trial court denied the motion to suppress. No findings of fact were filed. The case was subsequently tried to a jury. The suppression issues were re-litigated at trial. The jury found Clark guilty as charged in the indictment and assessed punishment at five years' confinement. In accordance with the jury's punishment recommendation, the trial court suspended the sentence and placed Clark on five years' community supervision. Clark appealed.

**MOTION TO SUPPRESS**

### A. Standard and Scope of Review

We review the trial court's denial of a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). First, we afford almost total deference to a trial court's determination of historical facts. *Valtierra*, 310 S.W.3d at 447; *Guzman*, 955 S.W.2d at 89. The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Valtierra*, 310 S.W.3d at 447; *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). The trial court, which has the opportunity to observe a witness's demeanor

and appearance, is entitled to believe or disbelieve all or part of a witness's testimony. *Valtierra*, 310 S.W.3d at 447; *Ross*, 32 S.W.3d at 855. When no findings of fact are filed, we view the evidence in the light most favorable to the trial court's ruling, and assume that the trial court made implicit findings of fact that support its ruling, provided those findings are supported by the record. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007); *Ross*, 32 S.W.3d at 855. Second, we review a trial court's application of the law of search and seizure to the facts *de novo*. *Valtierra*, 310 S.W.3d at 447; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We sustain the trial court's ruling if that ruling is "reasonably supported by the record and is correct on any theory of law applicable to the case." *Valtierra*, 310 S.W.3d at 447-48; *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

Generally, we limit the scope of our review to the evidence adduced at the suppression hearing. *Gutierrez*, 221 S.W.3d at 687. However, when the parties subsequently re-litigate the suppression issues at the trial on the merits, we consider the evidence adduced at the suppression hearing as well as the evidence adduced at trial in our review of the trial court's ruling. *Id.*; *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996).

### B. Probable Cause to Enter the Apartment

In his third issue, Clark argues there was no probable cause for Officer Stacy to enter his apartment. An unconsented police entry into a residential unit constitutes a search. *McNairy v. State*, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991) (citing *Katz v. United States*, 389 U.S. 347 (1967)). In order for a warrantless search to be justified, the State must show the existence of probable cause at the time the search was made, and the existence of exigent circumstances which made the procurement of a warrant impracticable. *Gutierrez*, 221 S.W.3d at 685; *id*. Probable cause to search exists when reasonably trustworthy facts and circumstances within the

knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found. *Gutierrez*, 221 S.W.3d at 685; *McNairy*, 835 S.W.2d at 106. One category of exigent circumstances that justifies a warrantless intrusion by police officers is preventing the destruction of evidence or contraband. *Gutierrez*, 221 S.W.3d at 685.

In the present case, Clark challenges the existence of probable cause for the officer to enter his apartment. He does not challenge the existence of exigent circumstances. In support of his argument, Clark asserts Officer Stacy "entered the threshold of the apartment before the observation of marijuana was detected (sic)." Officer Stacy testified he saw the marijuana on the coffee table as he was approaching the apartment door and before he entered the apartment. Other witnesses, including Clark's brother and a friend who was present when the search took place, indicated that Officer Stacy entered the apartment before he could have seen the marijuana on the coffee table. The defense witnesses indicated the top of the coffee table was too cluttered for Officer Stacy to have seen the marijuana, and the two men who were leaving the apartment obstructed Officer Stacy's view into the apartment. In addition to witness testimony, the defense presented two photographs of the view from just outside of the apartment to the interior of the apartment through the open doorway. These photographs, however, did not conclusively establish that Officer Stacy could not see the coffee table from just outside the doorway of the apartment. In the first photograph, the door is partially open, a person is standing in the doorway, and the coffee table is not visible. In the second photograph, the door is fully open, no one is standing in the doorway, and the coffee table is visible. Thus, whether Officer Stacy could have seen the coffee table from outside the apartment depended on the accounts of witnesses.

In this case, the trial court could have reasonably believed Officer Stacy's testimony that he saw the marijuana on the coffee table before he entered the apartment, and disbelieved the defense witnesses' testimony that Officer Stacy could not have seen the marijuana on the coffee table before he entered the apartment. Because whether Officer Stacy could see the marijuana on the coffee table before he entered the apartment ultimately depended upon a determination of the credibility and demeanor of the witnesses, we must defer to the trial court's implied finding that Officer Stacy saw the marijuana on the coffee table before he entered the apartment. *See Valtierra*, 310 S.W.3d at 447; *Ross*, 32 S.W.3d at 856.

In support of his argument that Officer Stacy lacked probable cause to enter the apartment, Clark cites two cases. In the first case, *State v. Steelman*, the court of criminal appeals upheld the trial court's decision to grant a motion to suppress evidence, recognizing that, based on the facts and circumstances of that case, "the mere odor of burning marijuana did not give the officers probable cause to believe that the [defendant] had committed the offense of possession of marijuana in their presence." 93 S.W.3d 102, 108 (Tex. Crim. App. 2002). The court went on to state that "[t]he odor of burning marijuana, standing alone, does not authorize a warrantless search and seizure in a home." *Id*. In the second case, *Estrada v. State*, , the court of criminal appeals faulted the court of appeals for concluding that the odor of marijuana coming out of a house, along with other observations, did not establish probable cause. 154 S.W.3d 604, 609 (Tex. Crim. App. 2005) The court of criminal appeals clarified that while an odor alone may not justify a warrantless search, "'the odor of an illegal substance' may be a factor that police officers use in determining whether there is probable cause that an offense has been or is being committed." *Id*. at 608-09.

Here, the evidence, when viewed in the light most favorable to the trial court's ruling, shows Officer Stacy did not rely exclusively on the odor of marijuana to establish probable cause. The sum total of the facts and circumstances available to Officer Stacy prior to his initial entry included: (1) the odor of burnt marijuana in the vicinity of Clark's apartment; (2) signs of activity from inside of Clark's apartment; (3) the time of night (between 12:30 and 1:00 a.m.); (4) a strong odor of marijuana emanating from the apartment when the door opened; (5) the sight of marijuana on a coffee table inside the apartment; (6) two people inside the apartment seated on a couch near the marijuana; and (7) two people exiting the apartment. In addition, the evidence showed Officer Stacy was a licensed drug recognition expert and a drug recognition instructor. Officer Stacy testified he recognized the odor of burnt marijuana from his training and experience and he identified the marijuana on the coffee table from his training and experience. In light of all of the information available to Officer Stacy, the reasonable inferences that could be drawn from that information, and Officer Stacy's experience, we conclude that probable cause did exist at the time of his initial entry into Clark's apartment.

Clark further complains about the reasons Officer Stacy gave for initially approaching Clark's apartment. According to Officer Stacy, he approached Clark's apartment that night because he smelled the odor of burnt marijuana and heard signs of activity from inside the apartment. This complaint, which questions Officer Stacy's action in approaching the door to Clark's apartment, is meritless. When Officer Stacy initially smelled the odor of burnt marijuana, he was patrolling a common area outside of Clark's apartment which was operated by the university. Officer Stacy decided to approach the apartment to investigate because of the odor and signs of activity coming from inside the apartment. Officer Stacy was planning to knock on the door of the apartment, but the door opened before he could do so. Officer Stacy's decision to

go up the stairs toward Clark's apartment to investigate was lawful. As a general rule, police officers are as free as any other citizen to knock on someone's door and ask to talk with them, to approach citizens on the street or in their car, and to ask for their cooperation or information. *State v. Garcia–Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008); *see State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002). Issue three is overruled.

### C. Voluntary Consent to Search the Bedroom

In his first issue, Clark argues the trial court erred in finding the existence of voluntary consent to search Clark's bedroom. Under the Fourth and Fourteenth Amendments, a search conducted without a warrant is per se unreasonable subject to a few specifically established and well-delineated exceptions. *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011); *Gutierrez*, 221 S.W.3d at 685. One of the exceptions to the warrant requirement is a search conducted with a person's voluntary consent. *Meekins*, 340 S.W.3d at 458; *Gutierrez*, 221 S.W.3d at 686. Under Texas law, the State must prove the voluntariness of consent to search by clear and convincing evidence. *Gutierrez*, 221 S.W.3d at 686; *State v. Ibarra*, 953 S.W.2d 242, 244-45 (Tex. Crim. App. 1997). The voluntariness of consent to search is a question of fact to be determined from analyzing all of the circumstances of a particular situation. *Meekins*, 340 S.W.3d at 459. Courts review the totality of the circumstances of a particular police-citizen interaction from the point of view of the objectively reasonable person. *Id*. Consent may not be coerced. *Meekins*, 340 S.W.3d at 458-59; *Gutierrez*, 221 S.W.3d at 686. The ultimate question is whether the person's will has been overborne and his capacity for self-determination critically impaired such that his consent to search must have been involuntary. *Meekins*, 340 S.W.3d at 459. "Because issues of consent are necessarily fact intensive, a trial court's finding of voluntariness must be accepted on appeal unless it is clearly erroneous." *Id.* at 460.

On appeal, Clark argues the State failed to meet its burden of showing Clark consented to the search by clear and convincing evidence. Clark asserts that the evidence shows that his father, not him, gave verbal consent to search his bedroom. Clark further asserts that the evidence shows that he gave written consent only after the search was underway. However, according to Officer Stacy's account, he obtained both verbal and written consent to search from Clark before the search began. The trial court could have reasonably found Officer Stacy's account more reliable than the defense witnesses' accounts.

Moreover, the evidence in this case does not show that Clark's will was overborne, or that his capacity for self-determination was critically impaired when he gave consent. The evidence shows Officer Stacy asked Clark for consent to search his bedroom two or three times. Officer Stacy testified that in at least one instance, Clark was evasive and did not respond. "[R]epeatedly asking for consent does not result in coercion, particularly when the person refuses to answer or is otherwise evasive in his response." *Meekins*, 340 S.W.3d at 464. According to Officer Stacy, Clark's demeanor was polite and calm. Clark informed Officer Stacy he wanted to talk to his father, and Clark was able to talk to both his father and mother before he gave consent. Officer Stacy also testified that he never made any promises to Clark, nor did he coerce or force Clark to sign the consent to search form. Even though Clark's father testified that the officers promised him they would "go easy" on Clark if consent to search was given, Clark himself testified that Officer Stacy never made any promises to him. Clark admitted he read the consent to search form before he signed it. The consent to search form states that Clark was informed of his "Constitutional right to refuse to give … any … officer consent to make a search … and that those rights are guaranteed by both the Texas and Federal Constitutions."

Viewing the totality of the circumstances in the light most favorable to the trial court's ruling, we conclude the trial court's finding that Clark voluntarily consented to the search of his bedroom was not clearly erroneous. Issue one is overruled.

## EXPERT TESTIMONY

In his second issue, Clark argues the trial court violated the Sixth Amendment right to compulsory process by disallowing expert testimony. At the suppression hearing, Clark's father testified that he had conducted an experiment to determine if Officer Stacy could have smelled marijuana coming from Clark's apartment. In this experiment, Clark's father lit three cigarettes and put them in an ashtray just outside of Clark's apartment. He then stood in the spot on the ground floor where Officer Stacy indicated he had smelled the odor of burnt marijuana. Next, Clark's father used smoke detectors to evaluate whether smoke from Clark's apartment could be detected on the ground floor. Although the trial court allowed Clark's father to testify about this experiment during the suppression hearing, it warned defense counsel that the witness would have to be qualified as an expert before his testimony would be allowed to be presented to the jury. Clark's father was never properly qualified as an expert witness, nor was his purported expert testimony shown to be reliable and relevant. At trial, when defense counsel attempted to elicit testimony from Clark's father about the experiment, the trial court disallowed the testimony on the basis that the witness had not been qualified as an expert.

Texas Rule of Evidence 702 allows a qualified expert to testify if the trial court finds that "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. Under Rule 702, the trial court serves as a gatekeeper. *Sexton v. State*, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002). Before admitting expert testimony under Rule 702, the trial court must be satisfied that three conditions

are met: (1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the factfinder in deciding the case. *Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010). These conditions are commonly referred to as (1) qualification, (2) reliability, and (3) relevance. *Id*. The proponent of the expert testimony bears the burden of establishing that these conditions are met. *Id.* (qualification and reliability); *Sexton*, 93 S.W.3d at 100 (reliability); *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992) (reliability and relevance).

"The Sixth Amendment right to compulsory process 'is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.'" *Coleman v. State*, 966 S.W.2d 525, 528 (Tex. Crim. App. 1998) (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)). However, the right to compulsory process is not absolute. *See Taylor v. Illinois*, 484 U.S. 400, 410 (1988). The United States Supreme Court has recognized that a criminal defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Id*. (holding a discovery sanction disallowing the testimony of a defense witness did not violate the Sixth Amendment's right to compulsory process). The Sixth Amendment does not guarantee the right to secure the testimony of any and all witnesses; rather, it guarantees only the right to obtain the testimony of witnesses whose testimony would be both material and favorable to the defense. *Coleman*, 966 S.W.2d at 527-28. To exercise this right, a criminal defendant must make a plausible showing that the witness's testimony would be both material and favorable to the defense. *Id*. at 528.

On appeal, Clark argues that by disallowing his purported expert testimony, the trial court violated his Sixth Amendment right to compulsory process. To support his argument, Clark cites a single case, *Washington v. Texas*, 388 U.S. 14 (1967). However, *Washington*, which did not involve the well-established procedures for admitting expert testimony, is readily distinguishable. In *Washington*, the United States Supreme Court held that a state statute precluding a criminal defendant from calling an accomplice witness to testify violated the Sixth Amendment right to compulsory process. *Id*. at 23.

Here, Clark did not qualify the witness as an expert in the area of smoke diffusion, and he did not prove to the trial court that the purported expert testimony was reliable and relevant. Thus, the purported expert testimony was inadmissible under the Texas Rules of Evidence. We conclude the Sixth Amendment right to compulsory process was not violated. Issue two is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.

Karen Angelini, Justice

Do not publish